2025 Tex. Bus. 33



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| RIVERSIDE STRATEGIC CAPITAL FUND I, L.P.; RSCF BLOCKER TRUE HEALTH, LLC; and RSCF I-A BLOCKER TRUE HEALTH, LLC, *Plaintiffs*, <br><br> v. <br><br> CLG INVESTMENTS, LLC; CHRISTOPHER GROTTENTHALER; COVERT INVESTMENT OPERATIONS, LLC; TRUE HEALTH DIAGNOSTIC MANAGEMENT LLC; L. RICHARD COVERT; LCG VENTURES II, LLC; FERNANDO DE LEON; TIMOTHY TATROWICZ ALBA DURATA, LLC; TOM D. WIPPMAN, in his capacity as TRUSTEE OF THE TOM D. WIPPMAN REVOCABLE TRUST; MARK THOMAS SMITH; ALEXANDRA NETTESHEIM; KYLE NETTESHEIM; ROBERT J. OSTERHOFF; RJ INVESTMENTS; MATT MILBURN; MICHAEL A. CLEMENTS; MICHAEL | § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 25-BC01B-0006 |

OSTERHOFF; MELINDA L. §
MILBURN; KAREN A. MILLER; §
JACK NOVAK; EDWARD MCCAN; §
DANIEL GROTTENTHALER; §
ANITA GROTTENTHALER; DANA §
M. HOVIND; CHRISTIAN §
RICHARDS; CHRISTOPHER W. §
KLING; in his capacity as TRUSTEE §
OF CHRISTOPHER W. & MARISSA §
M. KLING REV TRUST U/A/D §
5/11/2012; KEVIN M. NELLIS; §
CAROL A. NELLIS; BRUCE §
ZIVIAN; RYAN NELLIS; and §
ANCELMO E. LOPES, *Defendants* §

---

## MEMORANDUM OPINION

---

[¶ 1] Defendants Tom Wippman, Mark Thomas Smith, Alexandra Nettesheim, Kyle Nettesheim, Robert Osterhoff, RJ Investments, Matt Milburn, Michael Clements, Michael Osterhoff, Karen Miller, Edward McCann, Daniel Grottenthaler, Anita Grottenthaler, Christian Richards, Christopher Kling, Kevin Nellis, Carol Nellis, Bruce Zivian, Ryan Nellis, and Ancelmo E. Lopes[1] filed a special appearance.

---

[1] Referred to herein as "OSDs," meaning out-of-state defendants.

[¶ 2] Having considered the special appearance, response, pleadings, materials on file, and counsels' arguments, the court concluded that it lacked personal jurisdiction over those defendants, granted their special appearance, and dismissed without prejudice the claims against them on July 17, 2025.

[¶ 3] The court concluded that the special appearance should be granted because (i) plaintiffs failed to comply with the pleading requirements stated in *Kelly* and (ii) there are no allegations or evidence that any Out-of-State Defendant purposefully availed itself of Texas by contacting the forum and *those contacts* gave rise to this suit. In other words, it is not enough that defendants invested in a company that may have been headquartered in Texas and that plaintiffs' claims are premised on allegations that the company violated healthcare laws in Texas (and elsewhere) where no alleged fraudulent misrepresentation occurred in, was purposefully directed at, or was communicated to individuals in Texas.

[¶ 4] Further, this action arises from *plaintiffs'* investment in the company (and alleged misrepresentations in the investment agreement), not *defendants'* investment. Plaintiffs' investment agreement was with a Delaware entity, was governed by Delaware law, and did not require any party to perform any act in Texas. It is not alleged to have been negotiated in Texas

or particularly contemplate Texas as the nexus of activities. That representations of the company's compliance with healthcare laws may have allegedly been untrue in Texas (and elsewhere) is a fortuitous contact with the state because the company operated beyond Texas. Accordingly, these defendants' contacts with Texas are insufficient to support this court's personal jurisdiction over them in this action.

## I. BACKGROUND

### A. Plaintiffs' Allegations

[¶ 5] Plaintiffs Riverside Strategic Capital Fund I, L.P.; RSCF Blocker True Health, LLC; and RSCF I-A Blocker True Health, LLC (Riverside) filed this lawsuit against over thirty defendants in the 298th Judicial District Court of Dallas County, Texas.[2] A subset of defendants removed to this court.[3]

[¶ 6] Riverside alleges that it was defrauded in connection with an initial $50 million investment in True Health Group LLC (THG) in 2017.[4] As part of its investment, Riverside entered into a Securities Purchase Agreement (SPA) with defendants that contained representations concerning THG's

---

[2] *See generally* Plaintiffs' Original Petition (Pet.).

[3] *See generally* Defendants LCG Ventures, LLC, LCG Ventures II, LLC, and Leon Capital Partners, LLC's Notice of Removal.

[4] Pet. ¶ 1.

compliance with "applicable Healthcare Laws."[5] Riverside alleges it later learned that those representations were false, resulting in THG's bankruptcy and the loss of more than $84 million due to defendants' fraud.[6]

## B. Jurisdictional Facts

[¶ 7] The court considers allegations contained in Riverside's petition and related evidence submitted in response to the OSDs' special appearance. *See Kelly v. General Interior Const., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). The court does not consider allegations made outside the petition and only considers additional evidence to the extent it supports or undermines the petition's allegations. *Id.*

[¶ 8] Below are the allegations and evidence material to this opinion. The court considered every allegation contained within Riverside's pleadings, as well as all the evidence submitted by the parties on these issues framed by the pleadings.

---

[5] Pet. ¶ 1.

[6] Pet. ¶s 3–6.

### 1. Plaintiffs' Live Pleading

[¶ 9]  Riverside's petition is devoid of specific jurisdictional allegations as to any OSD, alleging only that "[t]his Court has personal jurisdiction over [the defendants] . . . pursuant to [the Texas Long-Arm Statute]" and that defendants "engaged in business in Texas."[7]

[¶ 10]  Riverside later relied on allegations that True Health Diagnostics, LLC (THD), THG's predecessor, and THG itself had business operations in Texas with Texas hospitals, and that defendants knew of THG's business in Texas when they chose to invest in the company.[8]

[¶ 11]  Riverside also relied on allegations that defendants designated CLG Investments, LLC as their agent and attorney-in-fact regarding to the SPA.[9]  Riverside alleged that CLG is a Delaware limited liability company with its principal place of business in Frisco, Texas and Christopher Grottenthaler its managing member.[10]  Grottenthaler in turn was THG's founder and CEO

---

[7] Pet. ¶s 14–47, 49.

[8] *See, e.g.*, Pet. ¶ 57.

[9] Pet. ¶ 64.

[10] Pet. ¶s 14, 64.

and pled guilty in 2024 to criminal charges for conspiracy to violate certain healthcare laws.[11]

[¶ 12]  Finally, Riverside admitted that each OSD was the citizen of a state other than Texas.[12]

## 2.  Jurisdictional Evidence[13]

[¶ 13]  As part of their special appearance, each OSD offered a declaration that they were not a Texas citizen, did not reside in Texas when the SPA was signed, and made his or her investment[14] from their home states

---

[11] Pet. ¶ 3.

[12] Pet. ¶s 25 (Tom Wippman), 26 (Mark Thomas Smith), 27 (Alexandra Nettesheim), 28 (Kyle Nettesheim), 29 (Robert Osterhoff), 30 (RJ Investments), 31 (Matt Milburn), 32 (Michael Clements), 33 (Michael Osterhoff), 35 (Karen Miller), 37 (Edward McCann), 38 (Daniel Grottenthaler), 39 (Anita Grottenthaler), 41 (Christian Richards), 42 (Christopher Kling), 43 (Kevin Nellis), 44 (Carol Nellis), 45 (Bruce Zivian), 46 (Ryan Nellis), and 47 (Ancelmo E. Lopes).

[13] The court draws the following from Defendants' Special Appearance (Special Appearance); Riverside's Response to Special Appearances (Riverside's Resp.); Defendants' Reply in Support of Special Appearance (Defs' Reply); Riverside's Supplement to Response to Special Appearances (Riverside's Suppl. Resp.); and Defendants' Response to Plaintiffs' Supplement on Defendants' Special Appearance (Defs' Suppl. Resp.).

[14] The defendants were likely referring to their investment in *THG*, not THD, as stated in the declarations. *See* Special Appearance at Ex. A.  The SPA and various LLC agreements at issue all relate to the parties' investment in THG.  *See, e.g.*, Riverside's Resp. at Ex. A-1 (THG LLC Agreement), A-13 Jan. 26, 2017, Amended THG LLC Agreement; Defs' Suppl. Resp. at Ex. 1 (SPA).

(not Texas).[15]   Additionally, every OSD besides Carol Nellis, Christian Richards, and Michael Osterhoff affirmed that they did not conduct business in Texas during 2017.[16]

[¶ 14] Riverside responded by providing THG's company agreements and materials from a previous litigation filed by THG's bankruptcy trustee, *Willow Tree Consulting Grp., LLC v. Grottenthaler*, No. DC-21-01060 (Dallas County Dist. Ct. Jan. 25, 2021) (Trustee Litigation).

[¶ 15] Following jurisdictional discovery, Riverside provided deposition transcripts for each OSD.[17]   Riverside summarized this testimony as follows: (i) all but one defendant admitted that they signed a 2017 LLC Agreement regarding THG's recapitalization; (ii) all but three admitted they knew THG had business in Texas; and (iii) Michael Osterhoff, Carol Nellis, Tom Wippman, and Christian Richards had additional contacts with Texas in connection with THG (discussed in more detail below).[18]

---

[15] *See generally* Exhibit A to Special Appearance.

[16] *See generally* Exhibit A to Special Appearance.

[17] *See generally* Appendix to Riverside's Suppl. Resp.

[18] Riverside's Suppl. Resp. at 16–17.

[¶ 16] Finally, defendants provided the SPA and a declaration from Christian Richards stating they moved to Virginia in January 2016 and worked at the THG headquarters in Virginia after that time.[19]

## C. Parties' Arguments

[¶ 17] Riverside's arguments essentially are that each OSD (i) knowingly invested in an entity (THG) with substantial Texas-based business activities; (ii) designated CLG Investments, LLC as their agent in connection with the SPA; (iii) consented to jurisdiction in Texas by signing the THG LLC Agreement in connection with the 2017 recapitalization; (iv) waived their objection to personal jurisdiction by appearing generally in the Trustee Litigation in Texas; and (v) four OSDs had additional Texas contacts related to their work with THG.

[¶ 18] The court concludes that (i), (ii), and (v) are rooted in an analysis of the minimum contacts of the OSDs with Texas and their connection to this lawsuit (*i.e.*, specific jurisdiction) whereas (iii) and (iv) are not based on OSDs' pre-suit contacts. The court's analysis below follows this division.

---

[19] Def's Suppl. Resp. at Exs. 1 & 3.

[¶ 19] OSDs argued that the petition failed to allege sufficient facts establishing jurisdiction over any OSD, and that under *Kelly* and *Steward Health* the court cannot consider factual allegations outside the pleadings.[20] They disputed that any of Riverside's arguments made jurisdiction proper in this case.[21] Accordingly, OSDs needed to prove only that they were non-residents, which they did.[22]

[¶ 20] The court agrees with OSDs.

## II. APPLICABLE LAW

### A. Special Appearances

[¶ 21] "[P]ersonal jurisdiction is a 'waivable right' and [a defendant] may give 'express or implied consent to the personal jurisdiction of the court.'" *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.). "To the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas." *Id.*

---

[20] Defs' Resp. at 3–4.

[21] *See generally* Defs' Resp. & Defs' Suppl. Resp.

[22] Special Appearance at 4.

[¶ 22] Rule of Civil Procedure 120a governs special appearances. TEX. R. CIV. P. 120a(1). A party availing itself of Rule 120a must strictly comply with its terms because failure to do so results in waiver. *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

[¶ 23] A party waives its special appearance when it (i) invokes the court's judgment on any question other than the court's jurisdiction; (ii) recognizes by its acts that an action is properly pending against it; or (iii) seeks affirmative action from the court. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). But a party does not waive its jurisdictional challenge by seeking affirmative relief consistent with the special appearance. *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 225 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B. *In Personam* Jurisdiction

[¶ 24] A nonresident defendant is subject to personal jurisdiction in Texas if (i) the Texas long-arm statute authorizes the exercise of jurisdiction and (ii) the exercise of jurisdiction does not violate federal or state constitutional due process guarantees. *Kelly*, 301 S.W.3d at 657.

[¶ 25] The long-arm statute permits courts to exercise jurisdiction over a defendant who "does business in this state," which the Legislature defines to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 17.042(2)).

[¶ 26] The statute's broad "doing business" language (that is, committing a tort in whole or in part in Texas) allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

[¶ 27] Therefore, courts need "only analyze whether [the defendant]'s acts would bring [the defendant] within Texas' jurisdiction consistent with constitutional due process requirements." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

[¶ 28] A state's exercise of jurisdiction comports with federal due process if (i) the nonresident defendant has "minimum contacts" with the state and (ii) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *M&F Worldwide Corp. v. Pepsi-Cola*

*Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

### 1.    Minimum Contacts

[¶ 29]  A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco*, 278 S.W.3d at 338.

[¶ 30]  Courts consider three issues in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated.  . . .  Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 339 (quoting *Moki Mac*, 221 S.W.3d at 575); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

[¶ 31] The minimum-contacts analysis focuses on the "quality and nature of the defendant's contacts," not quantity. *Retamco*, 278 S.W.3d at 339.

[¶ 32] "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* at 338 (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

### a. General Personal Jurisdiction

[¶ 33] A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (alteration in original) (quoting *Daimler v. Bauman*, 571 U.S. 117, 127 (2014)). This test requires "substantial activities within the forum" and presents "a more demanding minimum contacts analysis than for specific jurisdiction." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 797 (Tex. 2002). When a court has general jurisdiction over a nonresident, it may exercise jurisdiction "even if the cause of action did not arise from activities performed in the forum state." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010).

### b. Specific Personal Jurisdiction

[¶ 34] Specific jurisdiction requires that "(1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco*, 278 S.W.3d at 338 (buying Texas real estate) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579; *Guardian Royal*, 815 S.W.2d at 228 (specific jurisdiction focuses on "the relationship among the defendant, the forum and the litigation").

[¶ 35] For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. The "operative facts" of a litigation are those that "will be the focus of the trial" and "will consume most if not all of the litigation's attention." *Id.* at 585.

[¶ 36] Specific jurisdiction requires courts to analyze jurisdictional contacts on a claim-by-claim basis. *Moncrief Oil Int'l Inc. v. OAO Gazprom*,

414 S.W.3d 142, 150 (Tex. 2013); *see also Seiferth v. Helicopteros Atuneros,*

*Inc.,* 472 F.3d 266, 274–75 (5th Cir. 2006) ("If a defendant does not have

enough contacts to justify the exercise of general jurisdiction, the Due Process

Clause prohibits the exercise of jurisdiction over any claim that does not arise

out of or result from the defendant's forum contacts."). But a court need not

assess contacts on a claim-by-claim basis if all claims arise from the same

forum contact. *Moncrief,* 414 S.W.3d at 150–51.

### 2. Fair Play and Substantial Justice

[¶ 37] If the minimum contacts requirements are met, it is "rare" for

exercising personal jurisdiction to not comply with fair play and substantial

justice. *Retamco,* 278 S.W.3d at 341. Nonetheless, courts still consider

factors to ensure that exercising jurisdiction does not offend traditional

notions of fair play and substantial justice:

> (1) the burden on the defendant; (2) the interests of the forum
> state in adjudicating the dispute; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the interstate
> judicial system's interest in obtaining the most efficient
> resolution of controversies; and (5) the shared interest of the
> several States in furthering fundamental substantive social
> policies.

*Id.* (citing *Burger King,* 471 U.S. at 477–78).

### 3. The Parties' Burdens

[¶ 38] The plaintiff "bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly*, 301 S.W.3d at 658. If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, to negate jurisdiction the defendant need only prove that it does not live in Texas. *Id.* at 658–59. "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* at 658.

[¶ 39] "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* Defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659.

[¶ 40] Factually, a defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* The plaintiff must then respond with its own evidence that affirms its allegations or else risk dismissal. *Id.* However, the court considers "additional evidence," including, "stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes,

and any oral testimony," to the extent it supports or undermines the pleadings' allegations. *Id.* at 658 n.4 (citing TEX. R. CIV. P. 120a(3)). If the plaintiff's evidence is not within the scope of the pleadings' factual allegations, the plaintiff should amend the pleadings for consistency. *Id.* at 659 n.6; *see also Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.) (en banc).

[¶ 41] The defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction either (i) because the defendant's contacts with Texas fall short of purposeful availment (including that the claims do not arise from the contacts) or (ii) that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.* at 659.

### III. DISCUSSION

#### A. *Kelly* and *Steward Health Care*

[¶ 42] As a preliminary matter, the court concludes that plaintiffs' failure to plead specific, non-conclusory jurisdictional allegations for any OSD is an independent reason to grant the special appearance.

[¶ 43] As discussed at ¶s 9–12, Riverside's live pleading's only jurisdictional allegations are that "[t]his Court has personal jurisdiction over

[the defendants] . . . pursuant to [the Texas Long-Arm Statute]" and that defendants "engaged in business in Texas."[23]

[¶ 44] These allegations are conclusory and "insufficient to meet [Riverside's] burden of establishing jurisdiction" over any OSD. *PermiaCare v. L.R.H.*, 600 S.W.3d 431, 444 (Tex. App.—El Paso 2020, no pet.) (citing *State v. Lueck*, 290 S.W.3d 876, 884–85 (Tex. 2009)). Instead, Riverside had to allege specific facts that, if true, would affirmatively demonstrate the court's jurisdiction over defendants. *Id.*

[¶ 45] Riverside's arguments and evidence opposing the special appearance do not save it. The court considers only allegations in plaintiffs' petition—not allegations made in its response—and considers additional evidence only to the extent it supports or undermines those allegations. *Kelly*, 301 S.W.3d at 658–59; *see also id.* 658 n.4. As the Dallas Court of Appeals explained in *Steward Health*:

> Thus, according to *Kelly*, the allegations on which the plaintiff bases the exercise of jurisdiction over the defendant must be in the petition. The plaintiff's response to the special appearance may contain evidence supporting the petition's jurisdictional allegations, but that evidence must be consistent with the allegations in the petition.

---

[23] Pet. ¶s 14–47, 49.

633 S.W.3d at 129.

[¶ 46] "When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, . . . thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be." *Kelly*, 301 S.W.3d at 659.

[¶ 47] Because Riverside never amended its pleading, the evidence submitted in its oppositions does not relate to any non-conclusory allegations in its pleading. Accordingly, the court need not consider the allegations or evidence submitted with its briefing. *Kelly*, 301 S.W.3d at 659 n.6 ("If the plaintiff's evidence does not fall within the scope of the factual allegations in the pleading, then the plaintiff should amend the pleading for consistency"); *Steward Health*, 633 S.W.3d at 129 (same).

[¶ 48] Furthermore, *Lobell*, which Riverside extensively relied on in its briefing, says the same. *See Lobell v. Cap. Transp., LLC*, 2015 WL 9436255, at *4 (Tex. App.—Austin Dec. 15, 2015, no pet.) (". . . though this additional evidence m*erely supports or undermines allegations in pleadings*." (emphasis added)).

[¶ 49]  Riverside was alerted to this issue in the OSDs' reply brief.[24]  Yet, Riverside ignored defendants' argument.[25]

[¶ 50]  Therefore, because Riverside did not plead facts or present proper evidence sufficient to bring the OSDs within the court's jurisdiction (under the long-arm statute or based on due process), those defendants needed to show only that they were not residents of Texas.  *Kelly*, 301 S.W.3d at 658–59.  They did so.[26]

[¶ 51]  Alternatively, even if the court were to consider the additional allegations and evidence, they fail to demonstrate that any OSD had sufficient minimum contacts with Texas to establish the court's jurisdiction.

## B. Riverside's Contacts-Based Arguments

[¶ 52]  Riverside did not argue or allege general jurisdiction applies here.[27]  Accordingly, the court reasonably construes Riverside to argue that the OSDs are subject to specific jurisdiction because each (i) invested in a

---

[24] Defs' Reply at 3–4 (citing both *Kelly* and *Steward Health*).

[25] Riverside's Suppl. Resp. at 6 n.1 (acknowledging that both cases say the court can consider evidence attached to the opposition but ignoring *Steward*'s holding that the evidence must comport with the allegations in the petition).

[26] *See, e.g.*, Special Appearance at Ex. A.

[27] *See generally* Riverside's Resp. & Riverside's Suppl. Resp.

Texas-headquartered organization with substantial business operations in the state and (ii) designated CLG Investment, LLC as their agent in connection with the SPA.[28]

[¶ 53] Plaintiffs further argue that four OSDs have additional Texas contacts to support the court's jurisdiction.[29]

[¶ 54] The court rejects these arguments:

**1.  All OSDs**

### a.  Argument One: OSDs knowingly invested in a Texas-based enterprise

[¶ 55] The court begins by clarifying its understanding of Riverside's argument.  Riverside's initial response argued that the OSDs had minimum contacts with Texas because each (i) "knowingly invested in and sought to profit from True Health—a company headquartered in Texas and with substantial operations in the state" and (ii) signed a separate LLC agreement that required disputes be resolved in Texas.[30]  Riverside's supplemental

---

[28] Riverside's Resp. 9–14, 20–23; Riverside's Suppl. Resp. at 4–5, 18.

[29] Riverside's Resp. 23–26; Riverside's Suppl. Resp. at 14–16.

[30] Riverside Resp. at 20–21.

response argued that these facts mean defendants "consented" to jurisdiction in Texas. [31]

[¶ 56] The court reasonably construes the former to be a contacts-based, specific jurisdictional argument and the latter to be a true consent-based, venue provision argument. The court addresses the consent/LLC agreement argument later in this opinion.

[¶ 57] Riverside cites the Austin Court of Appeals decision of *Lobell* and the landmark supreme court *Retamco* case for the proposition that the OSDs knew they were creating "continuing relationships with and obligations to Texas citizens" by choosing to invest in a company headquartered in Texas[32] ~~and~~ with Texas-based operations, and therefore they have sufficient minimum contacts with Texas.[33] *Lobell*, 2015 WL 9436255, at *6; *see also Retamco*, 278 S.W.3d at 339.

[¶ 58] In *Retamco*, the plaintiff alleged that the non-resident defendant violated the Texas Uniform Fraudulent Transfer Act (TUFTA) by acting as the

---

[31] Riverside Suppl. Resp. at 18–21.

[32] There appears to be a dispute whether THG or THD were headquartered in Texas in 2017 when the SPA was signed. *Compare* Riverside Suppl. Resp. at 4–5, 11–16 *with* Defs' Suppl. Resp. at 3. The distinction is not material to the court's decision.

[33] *See* Riverside Resp. at 22–23, 25–26; Riverside Suppl. Resp. at 18–19.

transferee of Texas oil and gas interests. 278 S.W.3d at 335. Because oil and gas interests were real property interests, the supreme court held that the defendants' Texas contacts were purposeful, not random, fortuitous, or attenuated. *Id.* at 339. Accordingly, the fraudulent transfer *claims related directly to the alleged contacts*—defendants' receipt of Texas oil and gas interests.

[¶ 59] Likewise, the *Lobell* plaintiff "alleg[ed] *breach of partnership agreement* and various tort claims" when a partnership fell apart. 2015 WL 9436255, at *2 (emphasis added). The plaintiff further alleged and provided evidence that "the heart of the operations" of said partnership would be in Texas. *Id.* at *5. Accordingly, the court held that "the record reflects that Lobell 'most certainly knew that he was affiliating himself with' a business based in Texas when he created continuing relationships with and obligations to Texas citizens Denton and Baker and that the alleged partnership had a substantial connection with Texas." *Id.* at *6 (citing *Burger King*, 471 U.S. at 473). Again, the claims—breach of partnership agreement—related directly to the contacts that the court found created a substantial connection with Texas (*i.e.*, the Texas partnership).

[¶ 60] This case is different because it does not arise out of *OSDs'* investment in THG. Instead, Riverside's claims arise out of *their* investment in THG and alleged fraud in the SPA. Thus, there is no substantial connection between these contacts (defendants' investment in THG) and the operative facts of this litigation. *See Moki Mac*, 221 S.W.3d at 585; *see also id.* at 579 ("[F]or specific-jurisdiction purposes, purposeful availment has *no jurisdictional relevance unless* the defendant's liability arises from or relates to the forum contacts." (emphasis added)).

[¶ 61] Further, there is no evidence that (i) any OSD had direct contact with any plaintiff in Texas or otherwise, (ii) any OSD was in Texas when they signed the SPA, or (iii) that the SPA required any party to perform in Texas.

[¶ 62] Finally, regardless of whether THG was headquartered in Texas, that fact does not support the court's jurisdiction over its investors because it is not an operative fact of Riverside's claims and THG's contacts cannot be imputed against its individual owners. *See Nikolai v. Strate*, 922 S.W.2d 229, 241 (Tex. App.—Fort Worth 1996, writ denied) ("Texas law is clear that a business's contacts may not be imputed to its personnel to establish personal jurisdiction over them."); *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437–38 (Tex. 1982) ("it is the contacts of the defendant himself that are

determinative"). In other words, THG could have been headquartered anywhere and the result would be the same (*i.e.*, it is fortuitous).

[¶ 63] Accordingly, because whether the OSDs invested in a Texas-headquartered entity is not an operative fact of this litigation, Riverside's first contacts-based argument fails to demonstrate that this court has jurisdiction over those defendants.

### b. Argument Two: OSDs authorized CLG Investments, LLC to act as its agent during the SPA process

[¶ 64] Riverside argues that CLG Investments, LLC was the agent and attorney-in-fact for the OSDs in connection with the SPA and that it was managed by Christopher Grottenthaler.[34] Accordingly, it argues CLG's "jurisdictional contacts with respect to the SPA are therefore imputed to the Specially Appearing Defendants."[35] The petition further states that CLG is a Delaware LLC with its principal place of business in Frisco, Texas.[36]

---

[34] Riverside Resp. at 14, 21; *see also* Pet. ¶s 64, 86.

[35] Riverside Resp. at 22. Riverside states in its briefing that "[e]ach of the Specially Appearing Defendants made affirmative representations about True Health's Texas-based business in order to induce plaintiffs to invest in the company, which allowed defendants to obtain millions of dollars in distributions." Riverside Resp. at 21. There are no allegations or evidence anywhere in the record to support this statement that the court is aware of. The court assumes Riverside means by designating CLG as its agent, alleged misrepresentations in the SPA made by CLG/Grottenthaler can be imputed to the OSDs.

[36] Pet. ¶s 14.

[¶ 65] The court rejects those arguments for two reasons.

[¶ 66] First, regardless of whether CLG was OSDs' agent, where it resides (its principal place of business) is irrelevant in a specific-jurisdictional inquiry concerning OSDs. *See Siskind*, 642 S.W.2d at 437–38.

[¶ 67] Second, the court agrees with OSDs that Riverside has made no allegation or presented evidence that CLG took any action in Texas on behalf of defendants connected to OSDs' alleged misrepresentations.[37] Accordingly, there are no contacts upon which the court can find specific jurisdiction.

[¶ 68] In requesting time to take jurisdictional discovery, Riverside stated that relevant discovery would include "the actions taken by CLG Investments in Texas as agent for defendants under the SPA."[38] However, Riverside presented no evidence in its supplemental response showing any action CLG took in Texas or any misrepresentations made there.[39] Neither did Riverside provide any evidence related to Christopher Grottenthaler' actions in Texas CLG's manager.[40]

---

[37] See Defs' Reply at 7.

[38] Riverside Resp. at 31.

[39] *See generally* Riverside's Supp. Resp.

[40] *See generally* Riverside's Supp. Resp.

[¶ 69] Accordingly, Riverside's second contacts-based argument fails to demonstrate that this court has jurisdiction over the OSDs.

### 2.    Nellis, Osterhoff, Richards, and Wippman

[¶ 70] Plaintiffs argue that "four of the [OSDs] admitted to performing work for True Health, traveling to Texas in order to conduct True Health business, and conducting True Health business directed towards Texas."[41]

*Michael Osterhoff*

[¶ 71] Michael Osterhoff was general counsel for THG and admitted to (i) travelling to Texas for THG, (ii) giving the company legal advice regarding healthcare regulations, and (iii) reviewing a specific contract with a Texas rural hospital that relates to claims in the petition.[42]

[¶ 72] OSDs responded with evidence that Osterhoff's office in 2017 was at THG's headquarters in Virginia and he did not provide any legal

---

[41] Riverside's Suppl. Resp. at 7–8; *see also id.* at 14–16.  Riverside also summarily stated that Daniel and Anita Grottenthaler "[v]isited True Health Texas [c]orporate [h]eadquarters." Riverside's Suppl. Resp. at 17.  However, Riverside did not attempt to tie those visits to the operative facts of this litigation, and the court concludes they do not demonstrate personal jurisdiction.

[42] Riverside Resp. at 11; Riverside Suppl. Resp. at 14–15.

services in connection with the SPA.[43]  Riverside provided no controverting evidence.

### *Carol Nellis*

[¶ 73]  Carol Nellis was True Health's Vice President of National Sales and Marketing and then a Regional Vice President of Sales and (i) admitted to traveling weekly to Texas for over a year for THG and (ii) communicating with physicians in Texas.[44]

[¶ 74]  OSDs responded with evidence that Nellis traveled to Texas on a weekly basis for THG only in 2014 and 2015 and that her travel stopped once the THG headquarters moved to Virginia.[45]  Further, she was not involved with the SPA.[46]  Riverside provided no controverting evidence.

### *Tom D. Wippman*

[¶ 75]  Tom Wippman was a THG director and a member of the board's compliance subcommittee, and he admitted to attending THG board meetings in Texas.[47]

---

[43] Defs' Suppl. Resp. at 8.

[44] Riverside Resp. at 12–13; Riverside Suppl. Resp. at 15.

[45] Defs' Suppl. Resp. at 7.

[46] Defs' Suppl. Resp. at 7–8.

[47] Riverside Resp. at 13; Riverside Suppl. Resp. at 15.

[¶ 76] However, Wippman provided evidence that he served as a director in his personal capacity, but he is present in this lawsuit in his capacity as trustee of the Tom D. Wippman Trust.[48] Accordingly, OSDs argue that there is no evidence Wippman had any connection to Texas as trustee of the trust.[49] The court agrees.

### Christian Richards

[¶ 77] Christian Richards was THG's CFO and lived in Texas in 2015 while working for THG.[50]

[¶ 78] OSDs presented a declaration from Richards testifying that he moved to Virginia in January 2016 when THG moved its corporate headquarters and argued that he had no contacts relevant to the alleged fraudulent statements in the SPA.[51]

\* \* \* \* \*

[¶ 79] The court concludes that none of Osterhoff, Nellis, Wippman, or Christian was a Texas resident when the alleged fraud occurred with the SPA

---

[48] Riverside's Suppl. Resp. at Ex. D at 4:23–5:5.

[49] Defs' Suppl. Resp. at 9.

[50] Riverside Resp. at 11–12; Riverside Suppl. Resp. at 16.

[51] Defs' Suppl. Resp. at Ex. 3; Defs' Suppl. Resp. at 7.

signing, came to Texas in connection with the SPA, or made personal misrepresentations concerning the SPA (directed at Texas or otherwise).

[¶ 80] The court further concludes that none of Osterhoff, Nellis, Wippman, or Christian's contacts with Texas described above have a substantial connection to Riverside's claims concerning fraud in the SPA. Even Osterhoff is not alleged or shown to have made any personal representations to Riverside, and Riverside has not shown that he had an independent duty to report wrongdoings to Riverside regarding the SPA.

[¶ 81] Accordingly, Riverside has not demonstrated personal jurisdiction over Osterhoff, Nellis, Wippman, or Christian.

\* \* \* \* \*

[¶ 82] Therefore, the court concludes that none of the OSDs have minimum contacts with Texas such that the exercise of jurisdiction comports with due process. *Moki Mac*, 221 S.W.3d at 575.

## C. Riverside's Non-Contacts-Based Arguments

[¶ 83] Riverside presents two non-contacts-based arguments: (i) the OSDs consented to jurisdiction in Texas in connection with the 2017 THG

LLC Agreement and (ii) most of the OSDs waived personal jurisdiction in Texas by appearing generally in the Trustee Lawsuit.[52]

[¶ 84] The court rejects these arguments:

### 1. Forum-Selection Clause

[¶ 85] The same day that the SPA was executed the OSDs executed the 2017 THG LLC Agreement, which contained the following "Consent to Jurisdiction" provision:[53]

> Each of the parties hereto irrevocably agrees that any legal action or proceeding with respect to this Agreement and the rights and obligations arising hereunder . . . shall be brought and determined exclusively in the Federal or State Courts located in Dallas, Texas[.] . . . Each of the parties hereto hereby irrevocably submits *with regard to any such action or proceeding* . . . generally and unconditionally, to the personal jurisdiction of the aforesaid courts[.] . . . Each of the parties hereto hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, *in any action or proceeding with respect to this Agreement and the rights and obligations hereunder* . . . any claim that it or its property is exempt or immune from jurisdiction of any such court.[54]

---

[52] Riverside's Resp. at 10, 15–18, 21, 28–30; Riverside's Suppl. Resp. at 19–23.

[53] Riverside Resp. at 10, 21; Riverside Suppl. Resp. at 19–20.

[54] Riverside Resp. at Ex. A-13, § 10.5(a) (App. 411) (emphasis added).

[¶ 86] Riverside argues this clause amounted to a "consent" of jurisdiction in Texas generally as well as for claims arising out of the 2017 recapitalization of THG.[55] The court rejects that argument for several reasons.

[¶ 87] For starters, Riverside's reproduction of the provision excluded the emphasized portions above.[56] Including these phrases shows that this provision reaches only claims *arising under* the 2017 THG LLC Agreement.

[¶ 88] This case does not arise out of the 2017 THG LLC Agreement. All the alleged misrepresentations that Riverside sues on were made in the SPA.[57] In fact, Riverside's petition does not mention the THG LLC Agreement.[58]

[¶ 89] Furthermore, Riverside's argument that the THG LLC Agreement's mandatory venue provision applies to any claim relating to the "recapitalization" of THG is contradicted by the SPA's separate venue provision. The SPA states:

> Each party to this agreement hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this agreement . . . may be brought in the courts of the State of

---

[55] Riverside Suppl. Resp. at 19–20.

[56] *Compare* Riverside Suppl. Resp. at 20 *with* Riverside Resp. at App. 411.

[57] *See generally* Pet.

[58] *See generally* Pet.

Delaware or of the United States of America for the District of Delaware and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof.[59]

[¶ 90] If the 2017 THG LLC Agreement's mandatory venue provision meant that all claims regarding the 2017 "recapitalization" must be brought in Texas, the SPA's permissive venue provision would be rendered meaningless. *See U.S. Polyco, Inc. v. Texas Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 390 (Tex. 2023) (a court must harmonize and give effect to all the provisions of a contract by analyzing the provisions with reference to the whole agreement); *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) (when possible, courts construe a text in a way that does not render any of it meaningless).

[¶ 91] Accordingly, the court concludes that Riverside's claims arise out of the SPA, not the 2017 THG LLC Agreement, and therefore the OSDs did not consent to personal jurisdiction for the purposes of this action via the LLC Agreement.

---

[59] Def. Suppl. Resp. at Ex. 1 (SPA), § 8.9.

## 2. Waiver

[¶ 92] Finally, citing to the court's decision in *Primexx Energy Opportunity Fund, LP v. Primexx Energy Corp.*, 2025 Tex. Bus. 5, 2025 WL 446345, at *1 (1st Div.), Riverside argues that most of the OSDs waived any challenge to personal jurisdiction by generally appearing in the Trustee Litigation.[60]  However, *Primexx* is distinguishable and therefore does not control here.

[¶ 93] *Primexx* involved the same plaintiffs, the same defendants (except one additional defendant), and the same claims arising out of the same transaction as an earlier action filed in Texas. *Id.*, ¶ 75.  The court accordingly found that the case before it was "essentially a continuation" of the earlier proceeding and therefore defendants' general appearance in that earlier proceeding waived their ability to contest personal jurisdiction in the second proceeding. *Id.*, ¶s 74–77.

[¶ 94] However, the court's holding did not overturn the general premise "that a foreign defendant [does not] waive[] its right [to] object to personal jurisdiction, or consent[] to jurisdiction, in Texas by having defended

---

[60] Riverside Resp. at 28–30; Riverside Suppl. Resp. at 22–23.

other lawsuits in Texas." *Megadrill Services Ltd. v. Brighouse*, 556 S.W.3d 490, 498 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

[¶ 95] The case at bar is not "essentially a continuation" of the Trustee Litigation. The plaintiffs are different (Riverside versus the bankruptcy trustee), defendants are not all the same, and while many of the claims are based on the same or similar allegations, there is less overlap than *Primexx*. For instance, while both Riverside and the trustee allege THG violated healthcare laws through the use of medical services organizations (MSOs) and rural hospital billing schemes, the trustee presented far more additional claims related to the payment of illegal renumerations, billing schemes, etc.[61] And the claims are different; while Riverside's claims are rooted primarily in fraud, the trustee included claims related to breach of fiduciary duties, negligence, and fraudulent transfers.[62]

[¶ 96] Finally, the court is persuaded by OSDs' argument that the Trustee Litigation arose at least in part out of the THG LLC Agreement. Unlike this action, that lawsuit involved claims for breach of fiduciary duties

---

[61] *Compare* Pet. ¶s 57–61 *with* Defs' Suppl. Resp. at Ex. 1, ¶s 91, 93–118.

[62] *Compare* Pet. ¶s 83–98 *with* Defs' Suppl. Resp. at Ex. 1, ¶s 215–377.

that the LLC Agreement created. So, the THG LLC Agreement's mandatory venue provision arguably foreclosed those defendants' ability to object to jurisdiction in that case. That consideration weighs against finding waiver here, where the LLC Agreement does not apply.

## IV. CONCLUSION

[¶ 97] For these reasons, the court previously granted the OSDs' special appearances on July 17, 2025.

BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: August 19, 2025

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 104580173
Filing Code Description: No Fee Documents
Filing Description: Opinion
Status as of 8/19/2025 4:40 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Morgan DMeyer | | morgan.meyer@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Sean Lemoine | | sean.lemoine@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Rashella Widdoes - Paralegal | | widdoes@RoggeDunnGroup.com | 8/19/2025 4:32:06 PM | SENT |
| Camille Youngblood | | camille.youngblood@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Rogge Dunn | | Dunn@RoggeDunnGroup.com | 8/19/2025 4:32:06 PM | SENT |
| Chinar Hassan | | chinar.hassan@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Zachary Farrar | | Zachary.Farrar@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Ashley A.Hutcheson | | ashley.hutcheson@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Adam Gogolak | | amgogolak@wlrk.com | 8/19/2025 4:32:06 PM | SENT |
| William Savitt | | wdsavitt@wlrk.com | 8/19/2025 4:32:06 PM | SENT |
| Michael Avi-Yonah | | MSAviYonah@wlrk.com | 8/19/2025 4:32:06 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 8/19/2025 4:32:06 PM | SENT |
| Barb Morgan | | barb.morgan@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Karina Enriquez | | karina.enriquez@wickphillips.com | 8/19/2025 4:32:06 PM | SENT |
| Lane Webster | | webster@RoggeDunnGroup.com | 8/19/2025 4:32:06 PM | SENT |
| Ryan Downton | | ryan@thetexastrialgroup.com | 8/19/2025 4:32:06 PM | SENT |
| Harvey Joseph | | Joseph@roggedunngroup.com | 8/19/2025 4:32:06 PM | SENT |