

# The Business Court of Texas, Third Division

| | | |
|---|---|---|
| GO SECURE, INC., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 25-BC03A-0012 |
| | § | |
| CROWDSTRIKE, INC., and | § | |
| CROWDSTRIKE HOLDINGS, INC. | § | |
| *Defendants.* | § | |
| | § | |

## *Syllabus**

This intellectual-property dispute between two companies based in California arises out of the alleged misappropriation of trade secrets that initially occurred in California some fifteen years ago. Defendant CrowdStrike, Inc. (CrowdStrike) filed a special appearance, which the Court grants. The Court holds that it lacks general jurisdiction over CrowdStrike because, despite having a large office and sales in Texas, Crowdstrike does not have its principal place of business in Texas and is not "essentially at home" here under the exceptional-case doctrine. The Court holds that it lacks specific jurisdiction over CrowdStrike because plaintiff's claims do not "arise out of or relate to" CrowdStrike's Texas contacts, which occurred years after the initial alleged misappropriation and are peripheral to, rather than substantially connected to, the operative facts of the case.

---

* The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



**The Business Court of Texas,
Third Division**

| | | |
|---|---|---|
| GOSECURE INC., | § § § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 25-BC03A-0012 |
| CROWDSTRIKE, INC. and CROWDSTRIKE HOLDINGS, INC., | § § § | |
| *Defendants.* | § § | |

═══════════════════════════════════════════

**Opinion & Order on CrowdStrike, Inc.'s Special Appearance**

═══════════════════════════════════════════

¶1     Before the Court is defendant CrowdStrike, Inc.'s (CrowdStrike) Amended Special Appearance. The Court **GRANTS** the Amended Special Appearance and **DISMISSES** all claims against CrowdStrike for lack of personal jurisdiction.

## Introduction

¶2     Texas is lauded as an attractive place to do business for many reasons—favorable tax policies, low-operating costs, a skilled and diverse workforce, well-developed infrastructure and access to global markets, a pro-growth regulatory environment, and of course, the large customer base offered by its still growing

population of over 30 million people. It is unsurprising, then, that many national and international businesses have facilities and employees in Texas and regularly engage in commerce with Texas residents. Such business activities may subject a company to jurisdiction in Texas for lawsuits that arise out of or relate to those activities. But it will not, without more, subject a company to jurisdiction in Texas for all lawsuits of any kind. Even when a company has large offices in Texas, many employees in Texas, or does a lot of business with Texas residents, if the company chooses to incorporate and have its principal place of business in another forum, Texas's jurisdiction over the company is limited.

¶3 Federal due process mandates this result, and it serves Texas public policy and residents. Judicial overreach in this scenario would discourage doing business in Texas, reducing job opportunities and consumer choice for Texans, and place the burden on Texas courts to adjudicate disputes over out-of-state events involving out-of-state parties—like this one. Meanwhile, case-specific jurisdiction ensures that Texans are protected by the laws and courts of Texas for disputes that arise out of or relate to a business's Texas activities.

¶4 In this case, GoSecure, a Delaware company based in California, sued CrowdStrike, another Delaware company also based in California, alleging that CrowdStrike stole trade secrets from GoSecure in California in 2011 and 2012, and used them to develop products and services CrowdStrike still sells today—

2

nationally and globally, including in Texas. Because this is a dispute between California-based entities over events that occurred largely in California, it does not belong in Texas court, and that is not changed by the fact that CrowdStrike opened an office in Texas years after the trade secrets were allegedly stolen and now has both a sizeable Texas workforce and considerable sales in Texas.

## Background

### A.    GoSecure alleges that CrowdStrike misappropriated its trade secrets.

¶5    The underlying facts, as alleged by GoSecure, are as follows:

¶6    Beginning in 2004, GoSecure developed trade secrets and other confidential and proprietary information related to endpoint detection and response technology.[1] In September 2011, GoSecure was introduced to Dmitri Alperovitch, who signed a confidentiality agreement and served on GoSecure's Board of Directors through May 2012, acting as a technical liaison and obtaining highly sensitive engineering information.[2] While on the Board, Alperovitch recruited Jeremy Gould to join GoSecure as a senior engineer, where Gould accessed GoSecure's entire source code repository and other confidential materials.[3] Unbeknownst to GoSecure, Alperovitch and Gould conspired to emulate GoSecure's

---

[1] Plaintiff's Original Petition (Pet.) at ¶¶ 22, 25–26, 28–29, 31–32.

[2] *Id.* at ¶ 36.

[3] *Id.* at ¶ 37.

technology for the benefit of CrowdStrike, of which Alperovitch was a founder.[4] In March 2012, while still on GoSecure's Board, Alperovitch recruited Gould to leave GoSecure and join CrowdStrike.[5] Alperovitch stepped down from the Board in May 2012.[6]

¶7 When Alperovitch and Gould departed GoSecure, they assured GoSecure they would comply with their confidentiality obligations and CrowdStrike would not misuse GoSecure's trade secrets.[7] For more than a decade, GoSecure had no reason to suspect misappropriation.[8] But in July 2024, CrowdStrike suffered a well-publicized global outage (resulting in the "Blue Screen of Death"), and subsequent public analysis—specifically a Qihoo 360 report—revealed technical details of the Falcon Platform that indicated CrowdStrike's Falcon Platform employed methods derived from GoSecure's trade secrets.[9]

**B.      GoSecure originally sued CrowdStrike in California, alleging that the events underlying the action occurred there.**

¶8 The procedural background for GoSecure's trade-secret misappropriation claims begins in California state court, where GoSecure originally

---

[4] *Id.* at ¶ 6.

[5] *Id.* at ¶¶ 39-40.

[6] *Id.*

[7] *Id.* at ¶¶ 40-42.

[8] *Id.* at ¶¶ 42-44.

[9] *Id.* at ¶¶ 46-47, 50-52.

4

sued CrowdStrike based on the above-described facts in November 2024.[10] In that suit, GoSecure represented that its principal place of business at the time of the alleged misappropriation was in Santa Monica, California[11] and described itself as a small California startup company.[12] GoSecure alleged that the California court had personal jurisdiction over CrowdStrike because it was founded in California, long maintained its principal place of business in California, and misappropriated GoSecure's trade secrets in California.[13] GoSecure specifically alleged that CrowdStrike misappropriated its trade secrets in San Mateo County, California; induced or contributed to others misappropriating its trade secrets in San Mateo County, California; and marketed and sold products and services that misappropriated its trade secrets in San Mateo County, California.[14]

¶9 GoSecure alleged that the California court had personal jurisdiction over Alperovitch and Gould because: they committed the unlawful acts alleged in the complaint within California, and if they committed any unlawful acts outside of California, those acts caused injury to GoSecure within California; they were employed by CrowdStrike, for which they performed services in California; they

---

[10] ASA Exh. 3–A (Hrg. Exh. 3A). GoSecure also brought patent claims against CrowdStrike in federal court based on overlapping facts.

[11] *Id.* at ¶ 11.

[12] *Id.* at ¶¶ 5, 35.

[13] ASA Exh. 3–A (Hrg. Exh. 3A) at ¶ 18.

[14] *Id.* at ¶ 19.

committed the unlawful acts alleged in the complaint in California while in the scope of their employment with CrowdStrike; and Gould was a resident of San Mateo, California whose "responsibilities as a Senior Software Engineer caused him to regularly work with CrowdStrike engineers located within California."[15]

¶10    The Defendants in the California case filed a demurrer to GoSecure's complaint in January 2025.[16] Under California procedure, GoSecure could "amend its pleading once without leave of the court" before the hearing on the demurrer.[17] In May 2025, GoSecure filed its first amended complaint, mooting the demurrer.[18] In July, Defendants filed a new demurrer to GoSecure's first amended complaint.[19] One month later, GoSecure voluntarily dismissed its California action.[20]

## C.    GoSecure next sued CrowdStrike in Texas based on the same underlying events as the California suit.

¶11    GoSecure filed this suit against CrowdStrike and CrowdStrike Holdings, Inc. (CS Holdings) in August 2025, asserting claims for misappropriation of trade secrets under the common law and the Texas Uniform Trade Secrets Act (TUTSA), unfair competition by misappropriation, conversion, and unjust

---

[15] *Id.* at ¶¶ 20–21.

[16] ASA Exh. 3–B (Hrg. Exh. 3B).

[17] CAL. CIV. PROC. CODE § 472(a).

[18] ASA Exh. 3–D (Hrg. Exh. 3D).

[19] ASA Exh. 3–E (Hrg. Exh. 3E).

[20] ASA Exh. 3–F (Hrg. Exh. 3F).

enrichment, seeking damages, a permanent injunction, and attorney's fees.[21] GoSecure alleges that this Court has specific jurisdiction over CrowdStrike because it "does business in Texas and is headquartered in Texas"; "CrowdStrike has purposely availed itself of doing business in the state of Texas, and this suit arises out of or relates to CrowdStrike's contacts in the state"; and "the exercise of personal jurisdiction over CrowdStrike would not offend traditional notions of fair play and substantial justice."[22]

¶12    The "Facts" section of GoSecure's Texas petition largely tracks the facts alleged in the California action.[23]

¶13    CrowdStrike filed a special appearance, and later its Amended Special Appearance,[24] to which GoSecure responded,[25] and in support of which CrowdStrike filed a reply.[26] GoSecure also moved for sanctions with respect to CrowdStrike's conduct in jurisdictional discovery,[27] to which CrowdStrike responded,[28] and in support of which GoSecure filed a reply.[29] The Court held a hearing on

---

[21] Pet. at 1, ¶¶ 56–99.

[22] *Id.* at ¶ 19.

[23] *Compare* Pet. at ¶¶ 21–55 *with* ASA Exh. 3–D (Hrg. Exh. 3D) at ¶¶ 21–55.

[24] Amended Special Appearance for Defendant CrowdStrike, Inc. (ASA).

[25] GoSecure's Response to ASA (Resp.).

[26] CrowdStrike's Reply in Support of ASA (Reply).

[27] GoSecure's Motion for Sanctions (Sanctions Mot.).

[28] Defendants' Response to Sanctions Mot. (Sanctions Resp.).

[29] GoSecure's Reply in Support of Sanctions Mot. (Sanctions Reply).

CrowdStrike's Amended Special Appearance and GoSecure's Motion for Sanctions on February 24, 2026, at which CrowdStrike and GoSecure presented their arguments and evidence.

## Analysis

¶14    A court's authority to exercise personal jurisdiction over a nonresident defendant is a question of law.[30] Texas courts may exercise personal jurisdiction over a nonresident defendant only when doing so is (1) authorized by the Texas long-arm statute and (2) consistent with federal due-process guarantees.[31] In a business-transaction or tort case,[32] the Texas long-arm statute permits courts to exercise jurisdiction over a defendant who "does business" in Texas.[33] CrowdStrike concedes that it does business in Texas,[34] but argues that exercising jurisdiction over CrowdStrike would violate federal due-process guarantees. Federal due process allows a Texas court to exercise jurisdiction over a nonresident defendant only if the

---

[30] *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

[31] *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (citations omitted).

[32] TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045.

[33] Under the statute, doing business in Texas includes (1) contracting with a Texas resident, if either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; or (3) recruiting Texas residents for employment. *Id.* § 17.042.

[34] *See, e.g.*, ASA at 7, 8.

8

defendant has sufficient "minimum contacts" with Texas that maintenance of the suit here comports with "traditional notions of fair play and substantial justice."[35]

¶15   A defendant's contacts with Texas may give rise to two types of personal jurisdiction: general (or "all purpose") jurisdiction or specific (or "case linked") jurisdiction.[36] GoSecure asserts both. Under either type of jurisdiction, the Court considers only the defendant's contacts—not the unilateral activity of others—that are "purposeful rather than random, fortuitous, or attenuated," whereby the defendant seeks some benefit, advantage, or profit by availing itself of Texas.[37]

## A.  The Court decides this jurisdictional dispute on the merits rather than the alleged pleading and verification defects.

¶16   As the plaintiff, GoSecure bore the initial burden to plead allegations sufficient to confer personal jurisdiction over CrowdStrike; if it did so, the burden shifted to CrowdStrike to negate all jurisdictional bases alleged.[38] CrowdStrike can meet that burden by presenting evidence contradicting the facts alleged to establish minimum contacts; if it did so, the burden shifted back to GoSecure to respond with

---

[35] *BRP-Rotax GmbH & Co. v. Shaik*, 716 S.W.3d 98, 104 (Tex. 2025) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[36] *See id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)); *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016).

[37] *TV Azteca*, 490 S.W.3d at 38 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

[38] *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 574.

evidence supporting its jurisdictional allegations.[39] The Court must decide CrowdStrike's special appearance based on "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony."[40]

¶17 CrowdStrike asserts that GoSecure's petition fails to plead several of the factual theories underlying its personal-jurisdiction arguments, and GoSecure alleges that CrowdStrike failed to sufficiently verify its Amended Special Appearance under Rule 120a. Ultimately, neither complaint is determinative, and the Court decides the jurisdictional dispute on the merits. First, the Court addresses all of GoSecure's factual theories, regardless of whether certain facts are insufficiently pleaded,[41] because: (1) the parties understood and addressed the facts in play; (2) GoSecure could amend its petition to add the purportedly unpled facts;[42]

---

[39] *Kelly*, 301 S.W.3d at 659; *Jay Zabel & Assocs., Ltd. v. Compass Bank*, 527 S.W.3d 545, 552–53 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Tabasso v. BearCom Grp., Inc.*, 407 S.W.3d 822, 826 (Tex. App.—Dallas 2013, no pet.).

[40] TEX. R. CIV. P. 120a(3).

[41] CrowdStrike argues that "GoSecure failed to plead any facts about CrowdStrike Racing, chatbots, press releases, YouTube videos, or Falcon Complete." Reply at 12. But this evidence (discussed below) at least arguably supports GoSecure's pleadings that CrowdStrike is "home" in Austin, "does business and is headquartered in Texas," "employs hundreds of individuals" here, and its "engineers in Austin have been improperly using GoSecure's trade secrets and confidential information to develop its Falcon Platform for years." Pet. at ¶¶ 8, 19–20; *see also* Resp. at 11–13. *See State v. Yelp, Inc.*, 725 S.W.3d 170, 178 (Tex. App.—15th Dist. 2025, pet. filed); *Riverside Strategic Cap. Fund I, L.P. v. CLG Invs., LLC*, 2025 Tex. Bus. 33, ¶ 45, 2025 WL 2419620, at *7 (1st Div.).

[42] *See Kelly*, 301 S.W.3d at 659; *Yelp*, 725 S.W.3d at 180 n.4.

and (3) CrowdStrike is not harmed because it prevails. Second, the Court decides the Amended Special Appearance based on the record before it, regardless of whether every factual contention in the Amended Special Appearance is properly verified, because: (1) Diana Sychra's affidavit satisfies the "personal knowledge" requirement;[43] (2) the Court does not rely on any fact asserted in the Amended Special Appearance that is not supported by competent affidavit testimony;[44] and (3) just like GoSecure could amend to cure defects in its pleadings, CrowdStrike could cure procedural defects in its verification.[45]

¶18    The merits of this jurisdictional dispute are fully briefed and can be adjudicated based solely on the material that is properly before the Court. In the interest of judicial efficiency, the Court will not insist on pleading and briefing amendments that will not affect the outcome.

---

[43] *See, e.g.*, *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004); *Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 401 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Asshauer v. Glimcher Realty Tr.*, 228 S.W.3d 922, 926 (Tex. App.—Dallas 2007, no pet.). GoSecure's argument that Sychra did not do enough to investigate her conclusions goes to the weight of her affidavit testimony, which the Court took into account.

[44] The only factual assertion that GoSecure complains is present in the ASA but missing from the Sychra affidavit is the assertion that the individuals on "engineering teams responsible for researching and developing the Falcon platform" are "all located outside Texas." *See, e.g.*, *Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (requiring challenging party to identify missing jurisdictional facts in this circumstance); *Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at *4 (Tex. App.—Dallas Apr. 28, 2020, no pet.). The Court does not rely on that assertion.

[45] *See Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998).

**B.    The Court lacks general jurisdiction over CrowdStrike.**

¶19    Where general jurisdiction exists, it extends to all claims, not just those related to the defendant's activity in the forum state.[46] The standard for such "sweeping" jurisdiction is high: Texas courts have general jurisdiction over CrowdStrike only if its contacts with Texas are so continuous and systematic as to render it "essentially at home" in Texas.[47]

¶20    Typically, a business entity is at home in (a) its place of incorporation and (b) its principal place of business.[48] Additionally, in an "exceptional case," a corporate defendant's "operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home" in that forum.[49] The parties agree that CrowdStrike is incorporated in Delaware,[50] but they dispute the location of CrowdStrike's principal place of business and whether this is an "exceptional case" where CrowdStrike's Texas activities render it essentially at home here.

---

[46] *Ford Motor*, 592 U.S. at 358.

[47] *Id.*; *TV Azteca*, 490 S.W.3d at 37 (quoting *Daimler v. Bauman*, 571 U.S. 117, 127 (2014), which in turn quotes *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (recognizing this as "a high bar").

[48] *Ford Motor*, 592 U.S. at 359.

[49] *Daimler*, 571 U.S. at 139 n.19; *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

[50] Pet. at ¶ 16.

### 1. Under the nerve-center test, the evidence supports CrowdStrike's position that its principal place of business is not in Texas.

¶21 A corporation's principal place of business is the place where its "officers direct, control, and coordinate the corporation's activities"—frequently, the corporation's headquarters.[51] This is often called the nerve-center test.[52] By analogy, the nerve-center test focuses on the location of the corporation's metaphorical "brain," not necessarily where it has the most employees or customers.[53] If the nerve-center test were to elevate quantity over quality, it would give large states like Texas broader jurisdictional reach without sound reason.[54]

---

[51] *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *see also, e.g., Cadence Bank v. Johnson*, 160 F.4th 197, 202 (5th Cir. 2025); *Forever Living Prods. Int'l, LLC v. AV Europe GmbH*, 638 S.W.3d 719, 724 (Tex. App.—Dallas 2021, no pet.).

[52] *Hertz*, 559 U.S. at 92–93. In a footnote, GoSecure argues that the nerve-center analysis "offers limited guidance" here because of CrowdStrike's "remote-first business model" and that: "What matters instead is which office the company designates as its center of operations. CrowdStrike designates Austin." Resp. at 15 n.3. But CrowdStrike does not elaborate on this theory or identify pleadings or evidence supporting it. The closest the Court can find is CrowdStrike's evidence that CS Holdings designated Austin as its principal executive office. But CS Holdings is not CrowdStrike.

[53] *See Hertz*, 559 U.S. at 95.

[54] The Supreme Court explained in *Hertz* that "measuring the total amount of business activities that the corporation conducts [in a State] and determining whether they are 'significantly larger' than in the next-ranking State" has the "strange result" of favoring States with larger populations. 559 U.S. at 93–94. "[I]f a 'corporation may be deemed a citizen of California on th[e] basis' of 'activities [that] roughly reflect California's larger population ... nearly every national retailer—no matter how far flung its operations—will be deemed a citizen of California for diversity purposes.'" *Id.* at 94 (cleaned up; quoting *Davis v. HSBC Bank Nev., N. A.,* 557 F.3d 1026, 1029–1030 (2009)).

¶22    GoSecure pleaded that CrowdStrike's principal place of business is in Austin, Texas.[55] CrowdStrike asserts that it is in Sunnyvale, California.[56] To support its argument that its principal place of business is in Sunnyvale, California, CrowdStrike offered evidence that:

- Since its incorporation in 2011, CrowdStrike's annual franchise tax reports have consistently identified its principal place of business as located in California—and in Sunnyvale, California since 2019;[57]

- In August 2025, CrowdStrike identified Sunnyvale as its principal place of business in a California corporate filing;[58]

- CrowdStrike's "high level officers direct, control, and coordinate [its] activities" from California;[59]

- several of CrowdStrike's "key executives," including its CFO, Chief Accounting Officer, Chief Legal Officer, Chief HR Officer, Chief Business Officer, and Head of Engineering, "reside in the San Francisco Bay Area and direct the company's operations from the San Francisco Bay Area and CrowdStrike[]'s Sunnyvale office";[60]

- its President, CEO, CFO, Chief HR Officer, Chief Business Officer, and Head of Engineering have a "dedicated office" in Sunnyvale;[61]

- its personnel records show no office outside of California with "a similar or higher concentration of [its] high-level officers";[62]

---

[55] Pet. at ¶ 15.

[56] ASA at 7.

[57] ASA Exh. 2 (Hrg. Exh. 2) at ¶ 4 & Exh. 2–A (Hrg. Exh. 2-A).

[58] ASA Exh. 2 (Hrg. Exh. 2) at ¶ 9 & Exh. 2–C (Hrg. Exh. 2-C).

[59] ASA Exh. 2 (Hrg. Exh. 2) at ¶ 5.

[60] *Id.* at ¶ 6.

[61] *Id.*

[62] *Id.*

- its human resources team and its finance and accounting team are controlled from Sunnyvale;[63]

- its research and development leadership team is based in Sunnyvale and Seattle, Washington;[64]

- the Terms of Use on its website state that it is based in California;[65]

- it opened its first Texas office in 2017;[66]

- its personnel records indicate that over 80% of the employees in its Austin office "are sales, and primarily lower-level sales staff";[67] and

- although there are vice presidents assigned to the Austin office, there are no senior vice presidents assigned to the Austin (or any Texas) office.[68]

¶23    In response, GoSecure points to evidence that CrowdStrike's executive officers work remotely, including from outside California;[69] CrowdStrike's witness on this issue, Diana Sychra, was unable to say whether CrowdStrike's executive leadership ever met in Austin;[70] CrowdStrike has multiple vice presidents and its chief communications officer in Texas;[71] and when asked, the AI chatbot on CrowdStrike's website identified Austin, Texas as its headquarters.[72]

---

[63] *Id.* at ¶ 7.

[64] *Id.* at ¶ 8.

[65] *Id.* at ¶ 10 & Exh. 2–D (Hrg. Exh. 2-D) at p.3.

[66] *Id.* at ¶ 11.

[67] *Id.*

[68] *Id.*

[69] Resp. at 15.

[70] Resp. at 15.

[71] *Id.* at 13; Reply at 10–11; Sanctions Mot. Exh. 3 (Hrg. Exh. 14) at 47, 53, 79–81, 109.

[72] Sanctions Mot. Exh. 4 (Hrg. Exh. 5B).

¶24    While CrowdStrike's evidence is less than perfect in several respects, it does tend to show that CrowdStrike's nerve center is in California—and more importantly, not in Texas. Even if CrowdStrike's executive officers work remotely from outside California, none of them do so from Texas.[73] While CrowdStrike's chief communications officer is in Texas, the other sixteen members of its leadership team are not.[74] And while Sychra did not know everywhere CrowdStrike's executive leadership ever met, her testimony demonstrates that CrowdStrike's executive leadership meets regularly in the Sunnyvale office.[75]

¶25    GoSecure's evidence (including the evidence discussed below) indicates that CrowdStrike's Austin office is more than just the inconsequential "satellite" office for low-level sales staff CrowdStrike portrayed it to be.[76] But GoSecure identifies no evidence that CrowdStrike's officers "direct, control, and coordinate" its activities from Austin, or anywhere in Texas.[77] Finally, without any evidence about how the AI chatbot on CrowdStrike's website operates or what data set it was trained on, its statement that CrowdStrike's headquarters is in Austin has limited credibility.[78] Regardless, a corporation's headquarters is the corporation's

---

[73] Resp. at 15; Reply at 10.

[74] Resp. at 13; Reply at 10–11; Reply Exh. 4-10.

[75] Sanctions Mot. Exh. 3 (Hrg. Exh. 14) at 66, 73.

[76] ASA at 7, 8, 13, 20, & Exh. 2 (Hrg. Exh. 2) at ¶11.

[77] *Hertz*, 559 U.S. at 92–93; *Cadence Bank*, 160 F.4th at 202.

[78] *See, e.g.*, *Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 969 (7th Cir. 2026) (discussing

principal place of business only if it is actually the corporation's nerve center.[79] Here, the evidence is that Austin is not CrowdStrike's nerve center.

¶26 On this record, the weight of the credible evidence supports the conclusion that CrowdStrike's principal place of business is in California rather than Texas.[80] Notably, a federal court in California reached the same conclusion last year in the context of a dispute over federal diversity jurisdiction:

> Most of CrowdStrike's operational, administrative, and executive functions are directed from California. Five of CrowdStrike's 13 chief officers—its Chief Financial Officer, Chief Accounting Officer, Chief Legal Officer, Chief Human Resources Officer, and Chief Information Officer—work from the Sunnyvale office, and the remaining officers work remotely from their homes around the country (two of which are in California, and the other six are each in a different state). Moreover, two of CrowdStrike's four board members work from the Sunnyvale

---

risk of AI "hallucination," "where an AI large language model generates an output that is fictional, inaccurate, or nonsensical"); *S.M. v. N.Y.C. Dep't of Educ.*, No. 22-CV-7051 (VEC) (BCM), 2025 WL 4050877, at *10 (S.D.N.Y. Nov. 10, 2025) (declining to give weight to evidence generated by AI chatbot and noting that "AI-powered chatbots are prone to hallucinations" (quoting *Perez v. Evans*, No. 24-CV-356 (VSB) (SN), 2025 WL 2726792, at *4 (S.D.N.Y. Sept. 25, 2025)).

[79] *Hertz*, 559 U.S. at 93; *see also, e.g.*, *Aqua Terra U.S. Holdings, LLC v. Pappas Harris Cap., LLC*, No. 14-20-00858-CV, 2022 WL 3365265, at *3 (Tex. App.—Houston [14th Dist.] Aug. 16, 2022, no pet.) ("The company's nerve center normally is its headquarters, unless that is not the actual center of direction, control, and coordination."); *Ascentium Cap. LLC v. Hi-Tech the Sch. of Cosmetology Corp.*, 558 S.W.3d 824, 831 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("A company's principal place of business [is] not the place that is denominated its 'headquarters,' but the place that is 'the *actual* center of direction, control, and coordination.'" (quoting *Hertz*, 559 U.S. at 93)).

[80] *See also DFND Sec., Inc. v. CrowdStrike, Inc.*, No. 22-cv-04542-AMO, 2025 WL 808078, at *2 (N.D. Cal. Mar. 13, 2025) (finding California is CrowdStrike's principal place of business for purposes of diversity jurisdiction).

office. These facts alone strongly suggest Sunnyvale is the company's principal place of business.[81]

## 2. CrowdStrike's operations in Texas do not render it at home in Texas under the exceptional-case doctrine.

¶27　The Supreme Court recognizes "the possibility that in an exceptional case" an entity's "operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," even though the state is not the entity's place of incorporation or principal place of business.[82] This is often called the exceptional-case doctrine. To satisfy this standard, CrowdStrike's activities in Texas must be "comparable to a domestic enterprise" in Texas.[83]

¶28　The archetypal example of the exceptional-case doctrine is *Perkins v. Benguet Consolidated Mining Co.*, where United States Supreme Court held that Ohio had general jurisdiction over Benguet, a Philippines-based company whose president, general manager, and principal stockholder temporarily relocated to, and ran the company from, Ohio during Japan's occupation of the Philippine Islands in

---

[81] *Id.* (citations omitted); *see also Raza v. Crowdstrike, Inc.*, No. 21-CV-4196, 2021 WL 5882134, at *1 n.1 (N.D. Ill. Dec. 13, 2021) ("[CrowdStrike] is a citizen of Delaware (its State of incorporation) and California (the location of its principal place of business)").

[82] *Daimler*, 571 U.S. at 139, n.19; *Ford Motor*, 592 U.S. at 359; *BNSF*, 581 U.S. at 413.

[83] *Daimler*, 571 U.S. at 133 n.11.

World War II.[84] As the Supreme Court later observed: "Ohio was the corporation's principal, if temporary, place of business."[85]

¶29   Conversely, in *BNSF*, the Supreme Court held that BNSF was not "so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State,"[86] when its over 2,000 miles of railroad track in Montana was only about 6% of its total track mileage, its over 2,000 employees in Montana constituted less than 5% of its total work force, and it generated less than 10% of its total revenue in Montana.[87] The Court explained that the inquiry "does not focus solely on the magnitude of the defendant's in-state contacts," but rather "calls for an appraisal of a corporation's activities in their entirety."[88]

¶30   GoSecure argues that CrowdStrike's activities in Texas are so extensive as to render it "essentially at home" in Texas, giving rise to general jurisdiction under the exceptional-case doctrine. In support of its exceptional-case theory for general jurisdiction, GoSecure relies on evidence that:[89]

---

[84] 342 U.S. 437, 447–48 (1952); *see also BNSF*, 581 U.S. at 413.

[85] *Daimler*, 571 U.S. at 130 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984)).

[86] *BNSF*, 581 U.S. at 414 (quoting *Daimler,* 571 U.S. at 127).

[87] *Id.* at 406.

[88] *Id.* (quoting *Daimler,* 571 U.S. at 139, n.20).

[89] Resp. at 11–13.

- CrowdStrike's parent company, CS Holdings, designates CrowdStrike's Austin office as its "principal executive office";[90]

- between 2015 and 2025, CrowdStrike billed significant amounts[91] to customers with a ship-to address in Texas, including Dell Technologies, CrowdStrike's 2024 Global Partner of the Year;[92]

- Austin is CrowdStrike's largest office;[93]

- CrowdStrike issues press releases from Austin;[94]

- a posting on CrowdStrike's website related identifying Austin as the "home" of CrowdStrike Racing (CS Racing);[95] and

- CrowdStrike has its chief communications officer, multiple vice presidents, and several engineers in Texas.[96]

¶31     As an initial matter, the Court is not persuaded by GoSecure's evidence of CS Holdings' designation of Austin as its principal executive office or the website posting referring to Austin as CS Racing's "home." GoSecure does not dispute that

---

[90] GoSecure's Resp. to CrowdStrike's Special Exceptions, Exh. 1 at 20.

[91] An exact number is in the record but currently protected by a temporary sealing order.

[92] Sanctions Mot. Exh. 7 (Hrg. Exh. 5E).

[93] Resp. at 17, 18, 22; Sanctions Mot. at 5; Sanctions Mot. Exh. 3 (Hrg. Exh. 14) at 58, 79 & Exh. 5 (Hrg. Exh. 5C) at 2.

[94] Sanctions Mot. Exh. 2 (Hrg. Exh. 5A). GoSecure also asserts that CrowdStrike posted a YouTube video in 2020 in which someone associated with CrowdStrike stated: "We're looking to build this as our sales hub, make Austin really our home." Resp. at 13. But the evidence GoSecure cites in support of this contention does not relate to a YouTube video. *See id.* Ms. Sychra is questioned about the YouTube video elsewhere in her deposition, but she testified that she does not have personal knowledge about it. Sanctions Mot. Exh. 3 (Hrg. Exh. 14) at 100–03. The video itself is not in evidence.

[95] Sanctions Mot. Exh. 6 (Hrg. Exh. 5D).

[96] The evidence shows more specific numbers, omitted here because it is currently the subject of a temporary sealing order.

CS Holdings and CS Racing are separate legal entities from CrowdStrike.[97] GoSecure has not pleaded or argued any basis on which the Court could pierce the corporate veil, impute either of these entities' activities to CrowdStrike, or otherwise disregard their corporate separateness.[98] Nor has GoSecure argued any specific involvement by CS Holdings or CS Racing in the facts of this case beyond their affiliation with CrowdStrike.

¶32 GoSecure's evidence does show that Austin is CrowdStrike's largest office and home to one of CrowdStrike's executive officers, multiple vice presidents, numerous engineers, and a massive sales force. CrowdStrike's evidence does not controvert this. GoSecure's evidence also demonstrates that CrowdStrike does extensive business with Texas customers, including its recent Global Partner of the Year.[99] CrowdStrike's evidence does not controvert this either, but CrowdStrike

---

[97] ASA Exh. 2 (Hrg. Exh. 2) at ¶ 12; Reply at 12.

[98] *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 157 (Tex. 2013); *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007); *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) (per curiam); *see also Daimler*, 571 U.S. at 135–36; *cf. Volkswagen Aktiengesellschaft*, 669 S.W.3d at 419 (recognizing corporate separateness but that jurisdiction over related entity still may be available based on entity's *own* contacts); *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71–73 (Tex. 2016) (same); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873–74 (Tex. 2010) (same).

[99] *But see Kimich*, 310 S.W.3d at 874 ("If sales alone created general jurisdiction, a foreign manufacturer like AG could be sued in Texas for labor practices occurring in Germany even though they had nothing to do with Texas.").

offers additional evidence demonstrating that, while considerable, its sales in Texas are minor relative to its "activities in their entirety."[100]

¶33   On whole, the evidence shows that CrowdStrike has a significant presence in Texas—perhaps, in some ways, more significant than in other states. But Texas is not CrowdStrike's nerve center, and the Supreme Court has held that a State cannot exercise general jurisdiction over a corporation merely because it "engages in a substantial, continuous, and systematic course of business" in the State—a practice the Court called "unacceptably grasping."[101]

¶34   The role of the exceptional-case doctrine is not to expand general jurisdiction to an additional forum that is not a nerve center but could be its principal place of business under a different legal test that the Supreme Court did not adopt (such as the largest office). That would undermine one of the principal reasons the Supreme Court chose the nerve-center test: it points to a single principal place of

---

[100] Reply Exh. 4-3. *See BNSF*, 581 U.S. at 414 (requiring courts to consider defendant's in-state activities in context of its "activities in their entirety"); *Daimler*, 571 U.S. at 139-40 (same); *see also Certain Underwriters at Lloyd's, London v. Henry Vogt Mach. Co.*, 712 S.W.3d 909, 942 (Tex. App.—Houston [14th Dist.] 2025, no pet.); *EMO Trans, Inc. v. Inmobiliaria Axial, S.A. de C.V.*, 657 S.W.3d 772, 782–83 (Tex. App.—El Paso 2022, pet. denied).

[101] *Daimler*, 571 U.S. at 137–38; *see also id.* at 139 ("If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985))).

business.[102] That principle is not undermined by the exception recognized in *Perkins*, where wartime restrictions caused the company to temporarily relocate its operations center from the Philippines to Ohio, such that Ohio temporarily operated as the company's nerve center.[103]

¶35    GoSecure primarily relies on *PetroSaudi Oil Services Ltd. v. Hartley*[104] to support its position. In that case, the plaintiff was injured on a drillship anchored off the coast of Trinidad and Tobago and sued several defendants, including PetroSaudi, an entity organized under the laws of the Cayman Islands.[105] The First Court of Appeals in Houston upheld the trial court's exercise of jurisdiction over PetroSaudi based on the integral nature of PetroSaudi's Houston office, where the plaintiff was hired, to PetroSaudi's business.[106]

¶36    *PetroSaudi* is distinguishable from this case. PetroSaudi asserted that its principal place of business was in London, where its only employee worked, and it had no office in Texas; but the trial court credited the evidence that: PetroSaudi

---

[102] *Hertz*, 559 U.S. at 93 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."); *id.* at 95 (choosing nerve-center test over alternative in part because it "suggests a single location," while alternative more often pointed to multiple places); *Daimler*, 571 U.S. at 137 (pointing out that corporation's place of incorporation and principle place of business "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable").

[103] 342 U.S. at 447–48; *see Daimler*, 571 U.S. at 130 (noting that in *Perkins*, "Ohio was the corporation's principal, if temporary, place of business" (quoting *Keeton*, 465 U.S. at 780 n.11)).

[104] 617 S.W.3d 116 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

[105] *Id.* at 123.

[106] *Id.* at 141.

did have a Houston office; that was where the operations integral to the drillship occurred; and the drillship was the crux of PetroSaudi's business.[107] On that basis, the court of appeals concluded that the Houston office was effectively PetroSaudi's "general business office."[108] The same is not true here, where the evidence demonstrates significant activity in Texas but that the operational decisions integral to the crux of CrowdStrike's business are centered in California. In fact, in *Devon Energy Corp. v. Cormier*, the First Court distinguished *PetroSaudi* on similar grounds.[109]

¶37 This case is more akin to *Devon* than *PetroSaudi*. In *Devon*, the plaintiff argued that the trial court properly exercised general jurisdiction over two defendants, the "Devon Entities," because their activities in Texas were so continuous and systematic as to render them essentially at home in Texas.[110] The plaintiff relied on evidence that the Devon Entities owned and profited from "over

---

[107] *Id.* at 139–141 & n.8.

[108] *Id.* at 141; *see also Devon Energy Corp. v. Cormier*, No. 01-22-00921-CV, 2024 WL 4775785, at *10 (Tex. App.—Houston [1st Dist.] Nov. 14, 2024, no pet.).

[109] In *Devon Energy*, the court explained:

> *PetroSaudi* is distinguishable on the facts. In that case, this Court held that the defendant was essentially at home in Texas. PetroSaudi was incorporated in the Cayman Islands and listed its principal place of business in London, where it had one employee. This Court observed, however, that the company's "management team" was located in Houston and that the activities at the Houston office were extensive and essential to the corporation's business, which "was focused on finding opportunities for and operating the vessel, a drillship."

2024 WL 4775785, at *9 (citations omitted).

[110] *Id.* at *7.

one hundred thousand acres of land in Texas," were involved in the operation of "countless drilling rigs in Texas" that produced tens of thousands of barrels of oil daily, had employees in Texas and an office in downtown Houston, received 15% of their total production in 2019 from Texas, and had litigated other lawsuits in Harris County without contesting jurisdiction.[111] Nevertheless, the court of appeals held that the trial court erred by exercising general jurisdiction over the Deveon Entities, explaining that even though their contacts with Texas were, in some sense, continuous and systematic, they did not "rise to the relatively high level of rendering either Devon Entity essentially 'at home' in Texas."[112]

¶38    The same is true here. While CrowdStrike's activities in Texas may be continuous and systematic in some ways, they are not so continuous and systematic as to render CrowdStrike "at home" in Texas when Texas is neither its place of incorporation nor its principal place of business.[113]

---

[111] *Id.*

[112] *Id.* at *8.

[113] *Daimler*, 571 U.S. at 119 ("The words 'continuous and systematic,' … were used in *International Shoe* to describe situations in which the exercise of *specific* jurisdiction would be appropriate. With respect to all-purpose jurisdiction, *International Shoe* spoke instead of 'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit … on causes of action arising from dealings entirely distinct from those activities.'"); *see also Devon Energy Corp.*, 2024 WL 4775785, at *7 ("Operations substantial enough to render a nonresident corporation 'at home' requires more than contacts that are, in some sense, continuous and systematic contacts.").

## C. The Court lacks specific jurisdiction over CrowdStrike in this case.

¶39 Specific jurisdiction differs from general jurisdiction: "It covers defendants less intimately connected with a State, but only as to a narrower class of claims."[114] Specifically, it applies when (1) the nonresident defendant "engages in 'some act by which it purposefully avails itself of the privilege of conducting activities within the forum state' and (2) the plaintiff's claims 'arise out of or relate to' those forum contacts."[115] "This kind of personal jurisdiction involves a 'claim-by-claim' analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation."[116] Ultimately, "[t]he law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy."[117]

¶40 Here, CrowdStrike does not contest purposeful availment;[118] the dispute is whether GoSecure's claims "arise out of or relate to" CrowdStrike's purposeful contacts with Texas. While the phrase "relate to" may have a broader

---

[114] *Ford Motor*, 592 U.S. at 358; *see also BRP-Rotax*, 716 S.W.3d at 104; *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021).

[115] *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412–13 (cleaned up; quoting *Ford Motor*, 592 U.S. at 359).

[116] *Id.* at 413 (quoting *Moncrief Oil*, 414 S.W.3d at 150).

[117] *Ford Motor*, 592 U.S. at 360 (quoting *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 263 (2017)).

[118] ASA at 15; ASA Exh. 1 (Hrg. Exh. 1).

meaning in some contexts,[119] in the specific-jurisdiction context, "the phrase 'relate to' incorporates real limits, as it must to adequately protect" the due-process rights of nonresident defendants.[120] Applying the "arise out of or relate to" standard, the Texas Supreme Court has held: "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation."[121] The "operative facts" of the litigation are those that "will be the focus of the trial, will consume most if not all of the litigation's attention," and to which "the overwhelming majority of the evidence will be directed."[122]

---

[119] *E.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (stating that "ordinary meaning" of phrase "relating to" in statutory exemption provision was "a broad one"); *Alamo Title Co. v. WFG Nat'l Title Co. of Tex., LLC*, 2026 Tex. Bus. 6, ¶ 23, 2026 WL 292519, at *5 (4th Div.) (observing that the phrase "relating to" "is construed broadly by Texas courts").

[120] *Ford Motor*, 592 U.S. at 362.

[121] *Moki Mac*, 221 S.W.3d at 585 (holding that even though defendant solicited business from Texas and made assurances of safety to Texas customer on which customer relied in deciding to purchase out-of-state river rafting expedition from defendant, operative facts at trial would be defendant's conduct in Arizona where the expedition and underlying injury occurred); *see also TV Azteca*, 490 S.W.3d at 53–54 (distinguishing *Moki Mac* and upholding specific jurisdiction where defendant's Texas contacts constituting both personal availment and the actionable conduct in suit were in defamatory broadcasts that originated outside of Texas but were received, viewed, and caused harm in Texas); *Moncrief Oil*, 414 S.W.3d at 156–57 (holding that, while Texas court has personal jurisdiction over defendant for purposes of claim based on misappropriation of trade secret that allegedly occurred in Texas, it did not have jurisdiction for purposes of claim based on tortious interference that allegedly occurred at meeting in California); *Cornerstone Healthcare*, 493 S.W.3d at 74 (upholding jurisdiction where conduct constituting "crux" of defendant's purposeful contacts and focus of plaintiff's claims at trial was in Texas).

[122] *Moki Mac*, 221 S.W.3d at 585; *see also Volkswagen Aktiengesellschaft*, 669 S.W.3d at 431 & n.141; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156.

**1. The Court must examine each of GoSecure's claims to determine the operative facts and their connection to CrowdStrike's Texas contacts.**

¶41　As discussed above, the operative test is whether, on a claim-by-claim basis, there is "a substantial connection between [CrowdStrike's Texas] contacts and the operative facts" of GoSecure's claims, with the "operative facts" being those that "will be the focus of the trial, will consume most if not all of the litigation's attention," and to which "the overwhelming majority of the evidence will be directed."[123] CrowdStrike undertakes a claim-by-claim analysis and argues that the focus of trial and the overwhelming majority of evidence submitted at trial on GoSecure's claims will relate to whether GoSecure's trade secrets were disclosed to CrowdStrike and whether CrowdStrike incorporated them into its Falcon Platform—events in California (where GoSecure originally brought its claims) around 2011 and 2012 (years before CrowdStrike had a Texas presence). CrowdStrike also points out that there is not a single mention of Texas or Austin in the "Facts" section of GoSecure's petition.[124]

---

[123] *Moki Mac*, 221 S.W.3d at 585; *see also Volkswagen Aktiengesellschaft*, 669 S.W.3d at 431 & n.141; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156; *Cornerstone Healthcare*, 493 S.W.3d at 74.

[124] *See* Pet. at ¶¶ 21–55.

¶42 In response, GoSecure does not discuss the "operative facts" in this case or what will be the focus of the evidence or the trial.[125] Nor does it undertake a claim-by-claim analysis. Instead, GoSecure relies entirely on two Texas courts of appeals' opinions: *Twister B.V. v. Newton Research Partners, LP*[126] and *Technox Engineering & Services Private, Ltd. v. Sunwoo Co.*[127] But neither of those cases held that personal jurisdiction will always exist in trade-secret misappropriation cases where any offending sale allegedly occurred in Texas, much less that it will always exist as to the myriad of other claims GoSecure asserts here (some of which were not asserted in either *Twister* or *Technox*)—especially in the absence of any injury to a Texas resident or that occurred in Texas. Instead, each of those courts performed a claim-by-claim analysis of the connection between the defendant's Texas contacts and the operative facts for each of plaintiff's claims. This Court must do the same.

---

[125] GoSecure's only reference to "operative facts" in its brief is in a footnote describing another case. Resp. at 20 n.6. Its only reference to the "focus at trial" is in a quote discussing another case. *Id.* at 18.

[126] 364 S.W.3d 428 (Tex. App.—Dallas 2012, no pet.). *Twister* was a suit by a Texas general partnership alleging that a foreign defendant wrongfully disclosed its trade secrets in communications to Texas entities, wrongfully used its trade secrets in products it sold in Texas and elsewhere, and marketed its products in Texas. *Id.* at 432–33, 436.

[127] No. 01-22-00006-CV, 2022 WL 17981848 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied). In *Technox*, an out-of-state plaintiff asserted that a Texan, a Texas company, and the nonresident defendant that purchased the Texas company and was operated by the Texan acquired the plaintiff's trade secrets by deceit and incorporated them into their products, which were sold exclusively out of Texas. *Id.* at *1, *5–6.

### a. Misappropriation of trade secret

¶43    The nonresident defendants in both *Twister* and *Technox* argued that only the (alleged) acquisition and initial incorporation of the stolen trade secrets into their products—which occurred outside of Texas—were relevant and any subsequent use of the trade secrets in Texas was irrelevant.[128] Both courts rejected those arguments, holding that the subsequent marketing and sales could constitute improper "use" of trade secrets and provide a basis for liability.[129] But neither court ended their analysis there; both courts went onto examine the relationship between the defendant's alleged Texas contacts and the operative facts of the plaintiffs' misappropriation claim.[130] The *Twister* and *Technox* courts did not hold that sales in Texas after the initial acquisition and use of trade secrets would always be sufficient to establish personal jurisdiction.

¶44    GoSecure's overbroad reading of *Twister* and *Technox* would mean that any foreign plaintiff could bring suit in Texas against any foreign defendant for

---

[128] *Twister*, 364 S.W.3d at 437–38; *Technox*, 2022 WL 17981848, at *10.

[129] *Twister*, 364 S.W.3d at 438–39; *Technox*, 2022 WL 17981848, at *10–11.

[130] The *Twister* court concluded that the "focus of the trial" would include both issues related to Twister's acts in the Netherlands and its acts in Texas—such as Twister's alleged use and disclosure the trade secrets through Texas marketing and sales—and held that the operative facts of the misappropriation claim were substantially connected to Twister's Texas contacts. 364 S.W.3d at 439–40. Similarly, the *Technox* court considered the allegations and evidence as a whole and concluded that, while events in South Korea would be relevant, a long list of Texas contacts would also be relevant, and ultimately, the operative facts of the misappropriation claim were substantially connected to those contacts. 2022 WL 17981848, at *10–11.

trade-secret misappropriation that occurred anywhere in the world, so long as even one of the offending products was sold in Texas. Such a rule is inconsistent with the fact-specific nature of specific jurisdiction, could not be reconciled with federal due process,[131] and would result in exactly what specific-jurisdiction is designed to prevent: states with "little legitimate interest" in a suit encroaching on the jurisdiction of states more affected by the controversy.[132] Instead, federal due process and Texas precedent require this Court to examine whether CrowdStrike's contacts with Texas are substantially related to the operative facts of GoSecure's misappropriation claims in this case.[133]

¶45 GoSecure alleges three trade-secret misappropriation claims: statutory misappropriation of trade secrets (Count I),[134] common-law misappropriation of

---

[131] *See generally, Bristol-Myers Squibb*, 582 U.S. at 264–68; *see also id.* at 266–67 (distinguishing cases that involve in-state plaintiffs or in-state injuries, like *Twister* and *Technox*, from cases that involve neither in-state plaintiffs nor in-state injuries, like this). GoSecure disclaims any stream-of-commerce theory of jurisdiction. Resp. at 20. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571 (7th Cir. 2020) (concluding that stream-of-commerce is not appropriate theory for personal jurisdiction in trade-secret misappropriation cases and distinguishing claims better suited to such theories).

[132] *Ford Motor*, 592 U.S. at 360 (quoting *Bristol-Myers Squibb*, 582 U.S. at 263).

[133] *See, e.g.*, *Moki Mac*, 221 S.W.3d at 585; *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 431 & n.141; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156; *Cornerstone Healthcare*, 493 S.W.3d at 74.

[134] Generally, to recover damages for misappropriation of trade secrets under TUTSA, GoSecure must show that: (1) GoSecure owned a trade secret; (2) CrowdStrike misappropriated the trade secret; and (3) GoSecure suffered an injury. *See* TEX. CIV. PRAC. & REM. CODE §§ 134A.002(1), (3), (6), 134A.004(a); *EJ Madison, LLC v. Pro-Tech Diesel, Inc.*, 594 S.W.3d 632, 643 (Tex. App.—El Paso 2019, no pet.).

trade secrets (Count II),[135] and unfair competition by misappropriation (Count III).[136] While GoSecure's Texas contacts are not wholly irrelevant to these claims, the pleadings and evidence in the record demonstrate that they are not substantially connected to the operative facts.

### i. Element 1: the creation or ownership of trade secrets

¶46 All three of GoSecure's misappropriation claims require it to prove that it had trade secrets, which GoSecure alleges it developed between 2004 and 2012.[137] The operative facts relevant to this showing appear to have occurred exclusively or primarily in California where GoSecure was (and still is) located.[138] These events occurred years before CrowdStrike opened its first Texas office in 2017.

---

[135] The elements of common-law misappropriation of trade secrets are: (1) the trade secret existed; (2) the trade secret was acquired through breach of a confidential relationship or discovered by improper means; (3) the defendant used the trade secret without authorization; and (4) the plaintiff suffered damages as a result. *Twister*, 364 S.W.3d at 437; *Trilogy Software, Inc. v. Callidus Software, Inc.,* 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pets. denied).

[136] The elements of a claim for unfair competition by misappropriation have been identified as: (1) the plaintiff created trade secret information through extensive time, labor, skill, and money; (2) the defendant used that product in competition with the plaintiff, thereby gaining a special advantage in that competition because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff. *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 287 (Tex. App.—Tyler 2021, pet. denied); *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571–72 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied). "Misappropriation, or unlawful appropriation, is an element of" a claim for unfair competition by misappropriation. *Baylor Scott & White*, 633 S.W.3d at 287; *KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *5 (Tex. App.—Dallas Oct. 9, 2020, pet. denied); *see U.S. Sporting Prods.*, 865 S.W.2d at 217–18.

[137] *See* nn. 138–40, *supra*.

[138] Pet. at ¶¶ 11, 21–34; ASA Exh. 3-A (Hrg. Exh. 3A) at ¶¶ 9, 11, 14, 16, 20; Mot. to Dismiss for Forum Non Conveniens at 10.

### ii. Element 2: acquisition and/or use

¶47     All three claims also require GoSecure to prove that CrowdStrike misappropriated GoSecure's trade secrets, through wrongful acquisition and/or use.[139] GoSecure alleges that CrowdStrike improperly acquired GoSecure's trade secrets through Alperovitch and Gould, who worked for GoSecure in 2011 and 2012.[140] The factual allegations relating to this appear to have occurred primarily or exclusively in California, where GoSecure was (and still is) located; where GoSecure retained Alperovitch and Gould; and where CrowdStrike was founded.[141] As discussed above, GoSecure originally sued CrowdStrike for trade-secret misappropriation based on the same events in California. In that suit, GoSecure explicitly pleaded that the misappropriation occurred in California.[142]

¶48     As the courts in *Twister* and *Technox* observed, misappropriation is not limited to improper *acquisition* of trade secrets; it can also include improper *use* of trade secrets.[143] In its jurisdictional pleadings (but not in its pleading of the "Facts" underlying its claims), GoSecure alleges that "CrowdStrike engineers in Austin have been improperly using GoSecure's trade secrets and confidential information

---

[139] *See* nn. 138–40, *supra.*

[140] Pet. at ¶¶ 35–45.

[141] Pet. at ¶¶ 11, 35–45; ASA Exh. 2 (Hrg. Exh. 2) at ¶ 11; ASA Exh. 3–A (Hrg. Exh. 3A) at ¶¶ 9, 11, 14, 16, 20; Mot. to Dismiss for Forum Non Conveniens at 10.

[142] ASA Exh. 3–A (Hrg. Exh. 3A) at ¶¶ 14, 16; *see also id.* at ¶¶ 37–38.

[143] *Twister*, 364 S.W.3d at 438–39; *Technox*, 2022 WL 17981848, at *10.

to develop its Falcon Platform for years."[144] The evidence shows that CrowdStrike developed the Falcon Platform years before it had any engineers, or even an office, in Austin. But it is possible that an Austin engineer worked on the Falcon Platform after 2017 and that such work resulted in "use" of GoSecure's trade secrets allegedly stolen many years earlier. While CrowdStrike's evidence undermines the likelihood of this,[145] it does not conclusively disprove the possibility.

¶49    But not all unauthorized "use" is actionable as misappropriation; the use must be unlawful.[146] There are three principal ways in which GoSecure may show that CrowdStrike's alleged use of its trade secrets in the Falcon Platform was unlawful. First, GoSecure may prove that CrowdStrike acquired the trade secrets by improper means.[147] Second, GoSecure may prove that CrowdStrike knew or had reason to know that its knowledge of the trade secrets was (a) derived from or

---

[144] Pet. at ¶ 20.

[145] CrowdStrike's evidence indicates that most of its research and development occurs outside Texas. ASA Exh. 2 (Hrg. Exh. 2) at ¶ 8; ASA Exh. 2-B (Hrg. Exh. 2B). While GoSecure presents evidence that CrowdStrike has at least some engineers in Austin, Resp. at 6–7; Reply Exh. 4 (Hrg. Exh. 4) at 95–96, 114–21, the evidence does not show that any engineer in Austin even works on the Falcon Platform directly. There is evidence tying some Austin employees to Falcon Complete, but Falcon Complete is a service offered to users of the Falcon Platform. *See* Reply Exh. 4 (Hrg. Exh. 4) at 114–16; Reply Exh. 4-12 (Hrg. Exh. 4D). Essentially, rather than using their own employees, customers can outsource managing detection and response for the Falcon Platform to CrowdStrike. *Id.*

[146] *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B) (defining when use is actionable under TUTSA and requiring some additional impropriety beyond mere unauthorized use); *Twister*, 364 S.W.3d at 437 (defining elements of common-law misappropriation to include both use and improper acquisition); *Trilogy Software*, 143 S.W.3d at 463 (same).

[147] *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(i); *Twister*, 364 S.W.3d at 437; *Trilogy Software*, 143 S.W.3d at 463.

through a person who acquired them by improper means; (b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secrets; or (c) derived from or through a person who owed a duty to GoSecure to maintain the secrecy of or limit the use of the trade secrets.[148] Third, GoSecure may prove that CrowdStrike knew or had reason to know that the trade secrets were trade secrets and that knowledge of the trade secrets was acquired by accident or mistake.[149]

¶50    All three of these approaches involve analysis of the circumstances under which the trade secrets were obtained. As discussed above, the alleged facts relevant to those circumstances appear to have occurred primarily or exclusively in California in the early 2010's—years before CrowdStrike opened the Austin office at which it now employs engineers.

¶51    There may be evidence at trial about whether CrowdStrike continued to use GoSecure's trade secrets from 2017 to the present, and that may even include evidence relating to actions by CrowdStrike engineers in Texas. But such evidence is likely to be peripheral rather than the "focus of the trial," the subject that will "consume most if not all of the litigation's attention," or the subject of "the

---

[148] TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii).

[149] *Id.* § 134A.002(3)(B)(iii).

overwhelming majority of the evidence."[150] The operative facts, even for GoSecure's misappropriation-by-improper-use theory, are likely to be whether GoSecure developed trade secrets between 2004 and 2011; whether, and the circumstances under which, CrowdStrike, Alperovitch, and/or Gould obtained any such trade secrets from GoSecure in 2011 and 2012; and whether CrowdStrike then used any such trade secrets to create its Falcon Platform. All of this occurred years before any of CrowdStrike's alleged contacts with Texas.[151]

¶52 Under the circumstances of this particular case, CrowdStrike's continued sales, in Texas and around the globe, of a product allegedly designed using GoSecure's trade secrets over a decade ago in California does not establish a substantial connection between Texas and the operative facts of the case. Likewise, even if an engineer in CrowdStrike's Austin office worked on the Falcon Platform years after it was created in California using trade secrets allegedly stolen from GoSecure in California, that does not establish a substantial connection between Texas and the operative facts of the case.

---

[150] *Moki Mac*, 221 S.W.3d at 585; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156.

[151] *See* ASA Exh. 3–A (Hrg. Exh. 3A) at ¶ 48 (alleging that "CrowdStrike built its Falcon Platform using illicitly obtained trade secrets from GoSecure" and that "its current architecture has been in place since the Falcon Platform's inception, *i.e.*, shortly after Defendants misappropriated GoSecure's valuable trade secrets."); Pet. at ¶ 51 (likewise alleging that "CrowdStrike built its Falcon Platform using illicitly obtained trade secrets from GoSecure" but omitting timing allegations).

### iii.   Element 3: injury or right to injunctive relief

¶53   Finally, all three misappropriation claims require GoSecure to prove it was injured by CrowdStrike's conduct or at least that an injury is sufficiently threatened to support injunctive relief.[152] GoSecure does not allege that it suffered an injury in Texas; in the California lawsuit, it alleged that the injury occurred in California.[153]

¶54   The operative facts of a claim are typically those related to liability.[154] Regardless, considering the likely damages evidence does not change the result. GoSecure's damages evidence at trial may include evidence of CrowdStrike's Falcon Platform sales around the world, including in Texas. As previously noted, CrowdStrike's sales activity in Texas is minor relative to its "activities in their entirety."[155] It is not apparent that there is any reason to even distinguish CrowdStrike's sales in Texas from its sales in other states and foreign countries. Additionally, GoSecure could recover damages based on evidence of its own losses

---

[152] *See* nn. 138–40, *supra.*

[153] ASA Exh. 3–A (Hrg. Exh. 3A), 3–D (Hrg. Exh. 3D).

[154] *See, e.g., Moncrief Oil*, 414 S.W.3d at 156 ("Specific jurisdiction exists only if the alleged *liability* arises out of or is related to the defendant's activity within the forum." (emphasis added)); *TV Azteca*, 490 S.W.3d at 54 (stating that "specific jurisdiction requires the defendant's *liability* to arise from or relate to its contacts with the forum state" (emphasis added)); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 340 (Tex. 2009) ("Purposeful availment alone will not support an exercise of specific jurisdiction unless the defendant's *liability* arises from or relates to the forum contacts." (emphasis added and cleaned up; quoting *Moki Mac*, 221 S.W.3d at 579)).

[155] Reply Exh. 4-3. *See BNSF*, 581 U.S. at 414; *see also Daimler*, 571 U.S. at 139-40 (same); *Henry Vogt Mach.*, 712 S.W.3d at 942; *EMO Trans.*, 657 S.W.3d at 782–83.

without also proving CrowdStrike's profits,[156] and GoSecure also seeks injunctive relief (Count VI), which it could recover without proving damages at all.[157]

### iv. Conclusion

¶55　Specific jurisdiction is inherently a case-specific analysis, and the "operative facts" test is inherently fact-specific. Based on an examination of the specifics of this case and the relevant facts reflected in the pleadings and evidence, the Court concludes that there is not a substantial connection between CrowdStrike's alleged Texas contacts and the operative facts of GoSecure's trade-secret misappropriation claims.[158] Importantly, the Court does not hold that when trade secrets are created, acquired, and first used outside of Texas, a Texas court could never have personal jurisdiction over the out-of-state defendant accused of misappropriation. Even when out-of-state events form all or part of the operative facts of a particular case, a defendant's Texas contacts may be substantially related to the operative facts.

---

[156] *See* TEX. CIV. PRAC. & REM. CODE § 134A.004(a).

[157] Pet. at ¶¶ 92–93; *see* TEX. CIV. PRAC. & REM. CODE § 134A.003.

[158] *See Moki Mac*, 221 S.W.3d at 585 *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 431 & n.141; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156; *see also RSM Prod. Corp. v. Glob. Petroleum Grp., Ltd.*, 507 S.W.3d 383, 387, 400 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (upholding conclusion that Texas court lacked personal jurisdiction over misappropriation claim against nonresident defendant for improper use and disclosure of trade secrets, including by providing it to Texas entities in Houston).

¶56    *Technox* is a perfect example of this. *Technox* involved claims by South Korean company Sunwoo against a Texan, a Texas company, and Technox—an Indian company that acquired the Texas company and of which the Texan was president and controlling shareholder.[159] Sunwoo alleged that: the Texan, while working for the Texas company, tricked Sunwoo into sharing its trade secrets with him in South Korea; the Texan and the Texas company then shared Sunwoo's trade secrets with Technox; and Technox incorporated the trade secrets into the products it manufactured in South Korea, which products were manufactured exclusively for, and sold exclusively by, the Texas company from its office in Houston.[160] Considering the misappropriation allegations and evidence as a whole, the *Technox* court concluded that, while the trial on Sunwoo's misappropriation claim would involve events in South Korea, it would also involve a long list of Texas connections.[161] The court thus held that the operative facts of Sunwoo's misappropriation claim were substantially connected to Technox's Texas contacts.[162] In short, *Technox* has exactly the kind of facts that are missing here.

---

[159] 2022 WL 17981848, at *1.

[160] *Id.* at *1, *10–11. Sunwoo also alleged that Technox's acquisition of the Texas company, at a time when it owed Sunwoo millions of dollars, was a fraudulent transfer. *Id.* at *7–8.

[161] *Id.* at *10–11.

[162] *Id.* at *11.

### b. Conversion

¶57    GoSecure also asserts a claim for conversion (Count IV).[163] Neither *Twister* nor *Technox* involved a conversion claim against the nonresident defendant, and GoSecure makes no argument about whether its conversion claim arises out of or relates to CrowdStrike's Texas contacts. CrowdStrike argues that, if any conversion occurred, it could only have occurred in California, and GoSecure's ownership of the allegedly converted information would presumably be a creature of California law.[164]

¶58    To prevail on its conversion claim, GoSecure must show that (1) it owned, possessed, or had the right to immediate possession of personal property; (2) CrowdStrike unlawfully and without authorization exercised dominion or control over the property to the exclusion of, or inconsistent with, GoSecure's rights; and (3) GoSecure suffered injury as a result.[165] The property that is the basis of GoSecure's conversion claim is its trade secret and other confidential and proprietary information.[166] As with GoSecure's misappropriation claim, the facts

---

[163] Pet. at ¶¶ 79–85.

[164] ASA at 22–23 (citing *Laykin v. McFall*, 830 S.W.2d 266, 270-71 (Tex. App.—Amarillo 1992, orig. proceeding), as "holding no personal jurisdiction for conversion claim because 'Texas is not the focal point of relator's action,' rejecting as 'too broad' the principle that 'minimum contacts are always established when an intentional tortfeasor knowingly causes an injury in Texas'").

[165] *Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.); *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied); *see also Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

[166] Pet. at ¶¶ 80–83.

relevant to determining whether GoSecure possessed trade secrets or other confidential and proprietary information presumably occurred primarily or exclusively in California, where GoSecure is located and allegedly developed the information.[167] Likewise, any injury suffered by GoSecure was suffered in California, where GoSecure was and continues to be located.[168] And for much the same reasons discussed above, whether CrowdStrike exercised dominion or control over such information, and whether any such dominion or control was inconsistent with GoSecure's rights, will depend largely on facts that allegedly occurred in California in the early 2010's.[169] Even if CrowdStrike's alleged exercise of dominion or control continued after CrowdStrike opened its first Texas office in 2017 and after CrowdStrike began making sales in Texas, CrowdStrike's Texas contacts are not substantially related to the facts that are likely to be the "focus of the trial," the subject that will "consume most if not all of the litigation's attention," and the subject of "the overwhelming majority of the evidence" with respect to GoSecure's conversion claim.[170]

---

[167] Pet. at ¶¶ 11, 21–34; ASA Exh. 3-A (Hrg. Exh. 3A) at ¶¶ 9, 11, 14, 16, 20; Mot. to Dismiss for Forum Non Conveniens at 10.

[168] *Id.*

[169] Pet. at ¶¶ 11, 35–45; ASA Exh. 2 (Hrg. Exh. 2) at ¶ 11; ASA Exh. 3-A (Hrg. Exh. 3A) at ¶¶ 9, 11, 14, 16, 20; Mot. to Dismiss for Forum Non Conveniens at 10.

[170] *Moki Mac*, 221 S.W.3d at 585; *see also Volkswagen Aktiengesellschaft*, 669 S.W.3d at 431 & n.141; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156.

### c. Unjust enrichment

¶59    GoSecure asserts a claim for unjust enrichment (Count V).[171] To prevail on this claim, GoSecure must prove that CrowdStrike obtained a benefit from GoSecure by fraud, duress, or the taking of undue advantage.[172] The benefit GoSecure alleges CrowdStrike obtained from GoSecure is GoSecure's trade secrets and other confidential and proprietary information.[173] GoSecure alleges that CrowdStrike obtained this information by "taking an undue advantage through misappropriation of GoSecure's confidential, proprietary, and trade secret information."[174] Here too, the facts relevant to whether GoSecure possessed trade secrets or other confidential and proprietary information presumably occurred primarily or exclusively in California, where GoSecure is located and allegedly developed the information.[175] Likewise, whether CrowdStrike took undue advantage of GoSecure to obtain that information will depend largely on facts that allegedly

---

[171] Pet. at ¶¶ 86–91.

[172] *See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Quintero v. Urban Infraconstruction LLC*, 2026 Tex. Bus. 3, ¶ 31, 2026 WL 196887, at *8 (1st Div.).

[173] Pet. at ¶ 88.

[174] *Id.* at ¶ 90.

[175] *Id.* at ¶¶ 11, 21–34; ASA Exh. 3–A (Hrg. Exh. 3A) at ¶¶ 9, 11, 14, 16, 20; Mot. to Dismiss for Forum Non Conveniens at 10.

occurred in California in the early 2010's, when CrowdStrike allegedly obtained GoSecure's information.[176]

### 2. Under the pleadings and evidence here, CrowdStrike's Texas contacts are not substantially connected to the operative facts of GoSecure's claims.

¶60     Based on an examination of the specifics of this case and the relevant facts reflected in the pleadings and evidence, the Court concludes that there is not a substantial connection between CrowdStrike's alleged Texas contacts and the operative facts of GoSecure's claims.[177] As a result, the Court lacks specific jurisdiction over GoSecure's claims against CrowdStrike.

¶61     Consistently, the principles of interstate federalism—one of the two driving principles for due-process limitations on a state's exercise of personal jurisdiction over nonresident defendants[178]—weigh against the exercise of jurisdiction by Texas courts over suits like this, involving an out-of-state plaintiff's claims against an out-of-state defendant based primarily on out-of-state events that caused an out-of-state injury.[179] Interstate-federalism principles "'ensure that

---

[176] Pet. at ¶¶ 11, 35–45; ASA Exh. 2 (Hrg. Exh. 2) at ¶ 11; ASA Exh. 3–A (Hrg. Exh. 3A) at ¶¶ 9, 11, 14, 16, 20; Mot. to Dismiss for Forum Non Conveniens at 10.

[177] *See Moki Mac*, 221 S.W.3d at 585 *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 431 & n.141; *TV Azteca*, 490 S.W.3d at 53; *Moncrief Oil*, 414 S.W.3d at 156; *see also RSM Prod. Corp.*, 507 S.W.3d at 387, 400 .

[178] *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 13 (2025) ("We have repeatedly described the due process limitations imposed by the Fourteenth Amendment as driven by two principles: (1) treating defendants fairly, and (2) protecting interstate federalism." (internal quotation marks omitted; quoting *Ford Motor*, 592 U.S. at 360, which in turn quotes *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980), and citing *Bristol-Myers Squibb*, 582 U.S. at 263)).

[179] *See Ford Motor*, 592 U.S. at 368 (holding in products-liability cases that states where accidents

43

States with little legitimate interest in a suit' cannot wrest that suit from 'States more affected by the controversy.'"[180] Texas has little legitimate interest in adjudicating GoSecure's claims against CrowdStrike, whereas California, where GoSecure initially pursued its claims, is much more affected by the controversy.

¶62 These due-process limitations on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States."[181] Thus, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment."[182] Here, Texas does not have a strong interest in applying its law to the controversy between GoSecure and CrowdStrike; there is no

---

and injuries occurred had "significant interests" in adjudicating the dispute—protecting the safety of their residents and providing them with a convenient forum for redressing injuries suffered there—while states in which defective products were first sold had lesser interests in suits involving "all out-of-state parties, an out-of-state accident, and out-of-state injuries," such that the exercise of personal jurisdiction by those states "would undermine, rather than promote" due process).

[180] *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (quoting *Ford Motor*, 592 U.S. at 360).

[181] *Bristol-Myers Squibb*, 582 U.S. at 263 (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

[182] *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 294).

reason to think Texas is the most convenient forum for litigation—it was not even GoSecure's first choice of forum; and interstate federalism weighs against the exercise personal jurisdiction over CrowdStrike.

**D.     The Court need not reach CrowdStrike's "fair play and substantial justice" arguments.**

¶63     Because the Court lacks personal jurisdiction over CrowdStrike, it need not reach CrowdStrike's argument that the exercise of jurisdiction over it would offend traditional notions of fair play and substantial justice.

## Conclusion

¶64     The Court holds that it lacks personal jurisdiction over GoSecure's claims against CrowdStrike Inc., grants CrowdStrike Inc.'s Amended Special Appearance, and dismisses all claims against CrowdStrike Inc.

Date signed: March 13, 2026

Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division